THEANE EVANGELIS, SBN 243570
    TEvangelis@gibsondunn.com
MADELEINE F. MCKENNA, SBN 316088
    MMcKenna@gibsondunn.com
EMILY SAUER, SBN 324695
    ESauer@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California  90071-3197
Telephone:    213.229.7000
Facsimile:    213.229.7520

MEGAN COONEY, SBN 295174
    MCooney@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, California  92612-4412
Telephone:    949.451.3800
Facsimile:    949.451.4220

*Attorneys for Defendant PetSmart LLC*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BREANN SCALLY,<br><br>                    Plaintiff, on behalf of herself and all others similarly situated,<br><br>    v.<br><br>PETSMART LLC,<br><br>                    Defendant. | CASE NO.  3:22-cv-06210<br><br>**NOTICE OF REMOVAL OF CLASS ACTION BY DEFENDANT PETSMART LLC**<br><br>[Removal from the Superior Court of the State of California, County of San Mateo, Case No. 22-CIV-03057]<br><br>Action Filed:    July 28, 2022 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

**TO THE CLERK FOR THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, PLAINTIFF BREANN SCALLY, AND HER COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT**, under the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453, and 1711, Defendant PetSmart LLC ("PetSmart" or "Defendant") hereby removes to the United States District Court for the Northern District of California the above-captioned state court action, originally filed as Case No. 22-CIV-03057 in San Mateo County Superior Court, State of California. Removal is proper on the following grounds:

## I. TIMELINESS OF REMOVAL

1.    Plaintiff Breann Scally filed a putative Class Action Complaint against PetSmart in San Mateo County Superior Court, State of California, Case No. 22-CIV-03057, on July 28, 2022. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders served upon PetSmart as of the date of this filing are attached as Exhibits A–G to the Declaration of Megan Cooney ("Cooney Decl.") filed concurrently with this notice.

2.    Plaintiff served PetSmart with a Summons and Complaint through its registered agent for service of process on September 20, 2022. *See* Cooney Decl. Ex. E. This notice of removal is therefore timely because it is filed within 30 days after service was completed. 28 U.S.C. § 1446(b); *Anderson v. State Farm Mut. Auto. Ins. Co.*, 917 F.3d 1126, 1128 n.2 (9th Cir. 2019).

## II. SUMMARY OF ALLEGATIONS

3.    Removal is proper under 28 U.S.C. §§ 1441 and 1453 because this Court has subject-matter jurisdiction over this action and all claims asserted against PetSmart under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).

4.    CAFA applies "to any class action before or after the entry of a class certification order by the court with respect to that action." 28 U.S.C. § 1332(d)(8). This case is a putative "class action" under CAFA because it was brought under California Code of Civil Procedure section 382, California's state statute or rule authorizing an action to be brought by one or more representative persons as a class action. *See id.* § 1332(d)(1)(B); *see also* Cooney Decl., Ex. B, Compl. ¶ 65.

Gibson, Dunn & Crutcher LLP

NOTICE OF REMOVAL OF CLASS ACTION BY DEFENDANT PETSMART LLC
CASE NO. 3:22-cv-06210

5.      In her Class Action Complaint, Plaintiff asserts ten causes of action against PetSmart: (1) Unlawful Training Repayment Agreement (Cal. Bus. & Prof. Code §§ 2802, 2804); (2) Unlawful Grooming Tools Expenditures (Cal. Bus. & Prof. Code §§  2802, 2804); (3) Unlawful Operation of a Post-Secondary Institution (Cal. Bus. & Prof. Code § 17200); (4) Abusive Practices Relating to the Provision of a Consumer Financial Product or Service (Cal. Bus. & Prof. Code § 17200); (5) Unlawful Practices Relating to the Provision of a Consumer Financial Product or Service (Cal. Bus. & Prof. Code § 17200); (6) Violations of the Rosenthal Act (Cal. Civ. Code §§ 1788 *et seq.*); (7) Violations of the Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750 *et seq.*); (8) False Advertising (Cal. Bus. & Prof. Code §§ 17200, 17500); (9) Failure to Provide Meal and Rest Breaks (Cal. Lab.  Code §§  226.7, 512; IWC Wage Order No. 7); and (10) Unfair Competition for Unlawful Employment Practices, False Advertising, and Unlawful Debt Collection Practices (Cal. Bus. & Prof. Code § 17200).  *See* Cooney Decl., Ex. B, Compl. ¶¶ 72–158.  Plaintiff also seeks declaratory and injunctive relief.  *Id.* ¶¶ 159–62.

6.      Plaintiff asks the Court to "[c]ertify the case as a class action on behalf of the [p]roposed [c]lasses" and "[d]esignate Plaintiff as a class representative."  Cooney Decl., Ex. B, Compl. ¶ 163. Plaintiff seeks to represent four proposed classes, defined as follows:

(1)  **Training Repayment Agreement Provision Class:** "All individuals who have worked for PetSmart in California, received training from PetSmart's Grooming Academy, and are or have been subject to a training repayment agreement within the four years prior to the filing of this Complaint."

(2)  **Debt Collection Subclass:** "All individuals in the [Training Repayment Agreement Provision] Class who have been subject to debt collection activity from PetSmart or PetSmart's agents regarding TRAP debt within the four years prior to the filing of this Complaint."

(3)  **Grooming Tools Class:** "All individuals who have worked as a pet groomer at a PetSmart in California and have purchased their own grooming tools (including via a forgivable debt to PetSmart) within the four years prior to the filing of this Complaint."

(4) **Meal and Rest Break Class:** "All individuals who have worked as a pet groomer or bather at a PetSmart in California within the four years prior to the filing of this Complaint."

Cooney Decl., Ex. B, Compl. ¶ 65.

7.     Among other things, Plaintiff alleges that putative class members are entitled to damages (including statutory and punitive damages), premiums for missed meal periods and rest breaks, unreimbursed expenses, restitution, disgorgement, interest, and attorneys' fees and costs. *See* Cooney Decl., Ex. B, Compl. ¶¶ 84, 154, 163.

### III.  GROUNDS FOR REMOVAL

8.     Removal of a class action under CAFA is proper if:  (1) there are at least 100 members in the putative class; (2) there is minimal diversity between the parties, such that at least one class member is a citizen of a state different from any defendant; and (3) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.  *See* 28 U.S.C. §§ 1332(d), 1441.

9.     As noted above, Plaintiff seeks to certify a Meal and Rest Break Class, and alleges that members of this putative class are entitled to statutory penalties for allegedly non-compliant meal and rest periods as well as attorneys' fees and costs.  Cooney Decl., Ex. B, Compl. ¶¶ 65, 154, 163.  As demonstrated below, Plaintiff's allegations regarding this putative class alone satisfy the requirements for removal under CAFA.

10.     PetSmart denies any liability in this case, both as to Plaintiff's individual claims and as to the claims she seeks to pursue on behalf of the putative class.  PetSmart also intends to oppose class certification on multiple grounds, including that class treatment is inappropriate under these circumstances, in part because there are many material differences between the experiences of Plaintiff and the putative class members she seeks to represent, as well as amongst the putative class members. PetSmart expressly reserves all rights to oppose class certification and contest the merits of all claims asserted in the Complaint.  But for purposes of the jurisdictional requirements for removal only, the allegations in the Complaint identify a putative class of more than 100 members, establish the minimum diversity of citizenship required under CAFA, and put in controversy more than $5 million in the aggregate for the proposed classes, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(d).

**A.      The Proposed Class Consists of More than 100 Members**

11.      CAFA requires that the putative class contains at least 100 members.    28 U.S.C. § 1332(d)(5)(B).

12.      Here, the proposed Meal and Rest Break Class consists of "[a]ll individuals who have worked as a pet groomer or bather at a PetSmart in California within the four years prior to the filing of this Complaint."  Cooney Decl., Ex. B, Compl. ¶ 65.  PetSmart's personnel records, maintained in the normal course of PetSmart's business, reflect that during the period of July 28, 2018 to July 28, 2022, there were approximately 8,140 pet groomers and bathers employed by PetSmart in California.[1] Declaration of Chad Binns ("Binns Decl.") ¶ 5.  Accordingly, while PetSmart denies that class treatment is permissible or appropriate, the proposed class consists of over 100 members.

**B.      PetSmart and Plaintiff Are Not Citizens of the Same State**

13.      Under CAFA's minimum diversity of citizenship requirement, the plaintiff or any member of the putative class must be a citizen of a different state from any defendant.  *See* 28 U.S.C. § 1332(d)(2)(A).

14.      A person is a citizen of the state in which he or she is domiciled.  *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  A party's residence is prima facie evidence of his or her domicile.  *Kwong v. Santa Clara Cnty. Sheriff's Office*, 2018 WL 1258180, at *4 (N.D. Cal. Mar. 12, 2018) (citing *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994)). Plaintiff alleges that she "currently resides in Belmont, California" and was employed by PetSmart as a bather and groomer in Salinas, California.  Cooney Decl., Ex. B, Compl. ¶ 8.  Plaintiff is therefore considered a citizen of California for purposes of removal under CAFA.  *See Kwong*, 2018 WL 1258180, at *4.

15.      A limited liability company (LLC) "is a citizen of every state of which its owners/members are citizens."  *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).  PetSmart is a LLC whose sole owner/member is domiciled in Delaware with its principal

---

[1] The Notice of Removal "need not contain evidentiary submissions," and PetSmart reserves its right to submit additional evidentiary support in the event that Plaintiff moves for remand.  *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 84 (2014).

place of business in Arizona.[2]  Binns Decl. ¶ 2–3.  Thus, PetSmart is a citizen of Delaware, not California.  Accordingly, Plaintiff and PetSmart are citizens of different states and CAFA's minimal diversity requirement is met.  28 U.S.C. § 1332(d)(2)(A).

**C.     The Amount in Controversy Exceeds $5 Million**

16.     CAFA requires that the amount in controversy in a class action exceed $5 million, exclusive of interests and costs.  28 U.S.C. § 1332(d)(2).  In calculating the amount in controversy, a court must aggregate the claims of all individual class members.  *Id.* § 1332(d)(6).

17.     In assessing whether the amount-in-controversy requirement has been satisfied, "a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'"  *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012) (quoting *Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)).  In other words, the focus of the Court's inquiry must be on "what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe."  *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (citing *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)).

18.     "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee*, 574 U.S. at 89.  To satisfy this burden, a defendant may rely on a "reasonable" "chain of reasoning" that is based on "reasonable" "assumptions."  *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201–02 (9th Cir. 2015).  "An assumption may be reasonable if it is founded on the allegations of the complaint."  *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019); *see also Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) ("[I]n *Arias* we held that a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of jurisdictional elements." (internal

---

[2] The Supreme Court has interpreted the phrase "principal place of business" to mean "the place where a corporation's officers direct, control, and coordinate the corporation's activities," i.e., its "nerve center," which "should normally be the place where the corporation maintains its headquarters— provided that the headquarters is the actual center of direction, control, and coordination."  *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010).  PetSmart's headquarters, which are located in Phoenix, Arizona, constitute its "nerve center" under the test adopted in *Hertz* because PetSmart's high-level officers oversee the corporation's activities from that state.  See Binns Decl. ¶ 2.

NOTICE OF REMOVAL OF CLASS ACTION BY DEFENDANT PETSMART LLC
CASE NO. 3:22-cv-06210

Gibson, Dunn & Crutcher LLP

quotation marks and citations omitted)).  That is because "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability."  *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

19.   Accordingly, "when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court."  *Dart Cherokee*, 574 U.S. at 87.  Importantly, plaintiffs seeking to represent a putative class cannot "bind the absent class" through statements aimed to limit their recovery in an effort to "avoid removal to federal court."  *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595–96 (2013).

20.   PetSmart reserves the right to present evidence establishing the amount placed in controversy by each of Plaintiff's claims should Plaintiff challenge whether the jurisdictional amount-in-controversy threshold is satisfied.  *See Dart Cherokee*, 574 U.S. at 87–89; *see also Salter*, 974 F.3d at 964 (holding that only a "factual attack" that "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings," requires the removing defendant to "support her jurisdictional allegations with competent proof" (internal quotation marks omitted)).  "[W]hen a notice of removal plausibly alleges a basis for federal court jurisdiction, a district court may not remand the case back to state court without first giving the defendant an opportunity to show by a preponderance of the evidence that the jurisdictional requirements are satisfied."  *Arias*, 936 F.3d at 924.

21.   Although PetSmart denies that Plaintiff's claims have any merit, for the purposes of meeting the jurisdictional requirements for removal only, if Plaintiff were to prevail on every claim and allegation in the Complaint on behalf of the putative class, the requested monetary recovery would exceed $5 million.

**1.   Plaintiff's Allegations Regarding Meal and Rest Breaks Place at Least $5,256,239 in Controversy**

22.   Plaintiff alleges that PetSmart's "policy and practice" was "to regularly fail to provide employees with the opportunity to take compliant off-duty meal periods" in violation of California Labor Code sections 226.7 and 512.[3]  Cooney Decl., Ex. B, Compl. ¶ 151.  Further, Plaintiff alleges

[3] Employees working for 5 or more hours in one work period are entitled to a meal period absent any mutual agreement with the employer.  *See* Cal. Code Regs. tit. 8, § 11070, subd. 11(A).

PetSmart "failed to authorize and permit employees who worked more than 3.5 consecutive hours . . . to take off-duty rest breaks." *Id.* ¶ 152. As a result, Plaintiff alleges that she and other putative class members who were employed with PetSmart as groomers and bathers during the four-year period prior to filing this action—July 28, 2018 to July 28, 2022—are entitled to recover "one additional hour of pay at the employee's regular rate of compensation for each violation, plus any available . . . penalties." *Id.* ¶ 154; *see also* Cal. Lab. Code § 226.7(c). Considering PetSmart has employed approximately 8,140 groomers and bathers during the relevant time period, and Plaintiff alleges PetSmart's alleged failure to provide meal and rest breaks was "regular" and the result of a "policy and practice" to deny compliant breaks, Plaintiff's meal and rest break claim alone puts at least $5 million in controversy. Binns Decl. ¶ 5.

23.    During the four-year period prior to the filing of the action, PetSmart employed approximately 8,140 pet groomers and bathers in California. Binns Decl. ¶ 5. Based on PetSmart's personnel records, during the period from July 28, 2018 to July 28, 2022, these employees worked for at least 20 hours during an aggregate total of approximately 184,042 weekly pay periods. Binns Decl. ¶ 5. Additionally, PetSmart's records reflect that during this time, these groomers and bathers were paid an average rate of $14.28 per hour, exclusive of any regular rate of pay adjustments which would increase this average. Binns Decl. ¶ 5.

24.    Plaintiff's Complaint does not specify how many meal periods or rest breaks she claims she and other putative class members allegedly missed and for which they were not properly compensated. However, Plaintiff alleges that PetSmart "regularly failed" to manage employees in such a way that would permit them to take the required meal and break periods. Cooney Decl., Ex. B, Compl. ¶ 151–52. Plaintiff further alleges that PetSmart had a "policy and practice" of failing to provide employees with compliant meal and rest periods. Cooney Decl., Ex. B, Compl. ¶ 152–53.

25.    Based on these allegations alone, PetSmart assumes a conservative violation rate of just *one* non-compliant meal period and *one* non-compliant rest period per one-week pay period, at the average hourly rate of at least $14.28. *See, e.g., Garza v. Brinderson Constructors, Inc.*, 178 F. Supp. 3d 906, 912 (N.D. Cal. 2016) (finding a once-per-week violation rate reasonable where the complaint alleged that the defendant "regularly and consistently" provided non-compliant meal periods); *Mackall*

*v. Healthsource Global Staffing, Inc.*, 2016 WL 4579099, at *5 (N.D. Cal. Sept. 2, 2016) (noting that a one-day-per-week violation rate is reasonable where plaintiffs had alleged a policy or practice); *Danielsson v. Blood Ctrs. of Pac.*, 2019 WL 7290476, at *6 (N.D. Cal. Dec. 30, 2019) (finding assumption of "a 20% violation rate for meal and rest breaks during the putative class period" to be "reasonable given the allegations of a 'pattern and practice' of such violations"); *Arias*, 936 F.3d at 926–27 (finding a once-per-week violation rate reasonable where plaintiffs had alleged a routine failure of meal and rest break violations).

26.     Therefore, while denying liability altogether and for jurisdictional purposes only, Plaintiff's meal and rest period claims place at least **$5,256,239** in controversy, calculated as follows:

| | |
|---|---|
| Conservative estimate of rest break penalties for each employee in each pay period  (1 x $14.28 average hourly rate): | $14.28 |
| Aggregate number of pay periods: | 184,042 |
| Amount in controversy for rest break claims ($14.28 x 287,796): | $2,628,119 |
| Conservative estimate of meal period penalties for each employee in each pay period  (1 x $14.28 average hourly rate): | $14.28 |
| Aggregate number of pay periods: | 184,042 |
| Amount in controversy for meal period claims ($14.28 x 283,217): | $2,628,119 |
| **Combined amount in controversy for meal period and rest break claims ($2,628,119+ $2,628,119):** | **$5,256,239** |

27.     This assumption is conservative, especially in comparison to assumptions frequently found reasonable in meal and rest break cases where plaintiffs allege "routine" or "regular" violations, because it assumes that each member of the putative class suffered a meal and rest period violation just once per pay period.  *See Branch v. PM Realty Grp., L.P.*, 647 F. App'x 743, 745–46 (9th Cir. 2016) (holding "extrapolated violation rate" of two meal period violations per week was reasonable where plaintiff stated in a declaration that he and the putative class "frequently" had breaks interrupted); *Vasquez v. Randstad US, L.P.*, 2018 WL 327451, at *5 (N.D. Cal. Jan. 9, 2018) (upholding a 100% violation rate for a meal period claim where, like here, the plaintiff alleged that the defendant "consistently" and "regularly" committed the alleged violations); *Avila v. Kiewit Corp.*, 789 F. App'x

32, 33–34 (9th Cir. 2019) (reversing remand order after finding that allegations of "frequent" and "regular" missed meal periods and rest breaks allowed the defendant to "reasonably . . . assume[] that each of the class members suffered the violations alleged").

### 2.  Plaintiffs' Request for Attorneys' Fees Places an Additional $1,314,059 Million in Controversy

28.  Plaintiff also explicitly seeks attorneys' fees should she recover for any of the claims in this action.  *See* Cooney Decl., Ex. B, Compl. ¶¶ 154, 163.  "[W]hen a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees *must* be included in the assessment of the amount in controversy" for CAFA purposes.  *Arias*, 936 F.3d at 922.  While PetSmart reserves its right to contest any award of attorneys' fees at the appropriate time (and disputes that attorneys' fees should be recoverable for these claims), 25% of the common fund is generally used as a benchmark for an award of attorneys' fees in the Ninth Circuit.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); Barcia v. Contain-A-Way, Inc., 2009 WL 587844, at *5 (S.D. Cal. Mar. 6, 2009) ("In wage and hour cases, '[t]wenty-five percent is considered a benchmark for attorneys' fees in common fund cases.'"); *see also Betancourt v. OS Rest. Servs., LLC*, 298 Cal. Rptr. 3d 612, 618 (Cal. Ct. App. 2022) (defining meal and rest break claims as a wage case entitled to attorneys' fees).  PetSmart denies that any such attorneys' fees are owed to Plaintiff or putative class members.  However, for purposes of this jurisdictional analysis only, PetSmart relies on Plaintiff's allegations that the attorneys' fees are owed.

29.  Here, as demonstrated above, the amount in controversy is at least $5,256,239 for Plaintiff's meal and rest period claims alone, and Plaintiff has not indicated that she will seek less than 25% of a common fund in attorneys' fees.  *See* Cooney Decl., Ex. B, Compl. ¶¶ 154, 163.

30.  Using a 25% benchmark figure for potential attorneys' fees for Plaintiff's allegations regarding meal and rest periods results in estimated attorneys' fees of approximately **$1,314,059**, calculated as follows:

| | |
|---|---|
| Conservative estimate of amount in controversy from denied meal and rest break claims: | $5,256,239 |
| Attorneys' fees benchmark: | 25% |
| Attorneys' fees: | **$1,314,059** |

NOTICE OF REMOVAL OF CLASS ACTION BY DEFENDANT PETSMART LLC
CASE NO.  3:22-cv-06210

Gibson, Dunn &
Crutcher LLP

### 3.    Just One of Plaintiff's Ten Causes of Action Places More than $5 Million in Controversy

31.    In summary, Plaintiff's claims for alleged meal and rest period violations ($5,256,239), plus her related request for attorneys' fees ($1,314,059), place at least **$6,570,298** in controversy, above CAFA's $5 million requirement.[4]  This amount-in-controversy calculation underestimates the total amount placed in controversy by the Complaint because it is based on conservative assumptions about Plaintiff's putative class allegations and does not account for, among other things, PetSmart's alleged unlawful training repayment agreement (First Cause of Action), unlawful grooming tools expenditures (Second Cause of Action), unlawful operation of a post-secondary institution (Third Cause of Action), abusive and unlawful practices in providing a consumer financial product (Fourth and Fifth Causes of Action), unlawful debt collection practices (Sixth Cause of Action), deceptive advertising practices (Seventh and Eighth Causes of Action), and unfair competition (Tenth Cause of Action).  Should the Court or Plaintiff contest that the amount in controversy is satisfied, PetSmart reserves the right to present evidence and argument to show that these claims put additional sums in controversy that confirm the Court has jurisdiction under CAFA.

32.    Plaintiff's allegations therefore place more than the requisite $5 million in controversy. The jurisdictional amount-in-controversy requirement is met, and removal to this Court is proper under CAFA.

### IV.  THIS COURT HAS JURISDICTION AND REMOVAL IS PROPER

33.    Based on the foregoing facts and allegations, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because:

    a.    This is a civil action which is a class action within the meaning of § 1332(d)(1)(B);

    b.    The action involves a putative class of at least 100 persons as required by § 1332(d)(5)(B);

---

[4] If this calculation only included pay periods that had a minimum of 25 hours worked, the amount in controversy would still exceed $5 million, including attorneys' fees.  The aggregate number of pay periods in which employees worked more than 25 hours is 150,543.  Binns Decl. ¶ 5.  With an average wage of $14.28 per hour, the total in controversy assuming one meal period and one rest break violation per week is $4,299,508.  At a 25% benchmark, attorneys fees would be $1,074,877.  Thus, even for a minimum 25 hour pay period, the total alleged amount in controversy for the meal and rest break claim alone is $5,374,385.

NOTICE OF REMOVAL OF CLASS ACTION BY DEFENDANT PETSMART LLC
CASE NO. 3:22-cv-06210

Gibson, Dunn & Crutcher LLP

c. The amount in controversy exceeds $5 million, exclusive of interest and costs, as required by § 1332(d)(2); and

d. At least one member of the putative class is a citizen of a state different from that of any defendant as required by § 1332(d)(2)(A).

Accordingly, this action is properly removable under 28 U.S.C. §§ 1441, 1446, and 1453.

34.    The United States District Court for the Northern District of California is the federal judicial district in which the San Mateo County Superior Court sits.  This action was originally filed in San Mateo County Superior Court, rendering venue in this federal judicial district proper.  *See* 28 U.S.C. § 84(c); *see also id.* § 1441(a).

35.    True and correct copies of all process, pleadings, and orders served upon PetSmart and/or filed in the state court, including the (a) Summons, (b) Class Action Complaint, (c) Civil Case Cover Sheet, (d) Notice to Plaintiff, (e) Proof of Service of Summons on PetSmart, and (f) Case Management Order are attached as Exhibits A–G to the Cooney Declaration filed concurrently herewith.  These filings constitute the complete record of all records and proceedings in the state court.

36.    Upon filing the Notice of Removal, PetSmart will furnish written notice to Plaintiff's counsel, and will file and serve a copy of this Notice with the Clerk of the San Mateo County Superior Court, pursuant to 28 U.S.C. § 1446(d).

DATED: October 19, 2022

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Theane Evangelis*

Theane Evangelis
Megan Cooney
Madeleine F. McKenna
Emily Sauer

*Attorneys for Defendant PetSmart LLC*

Gibson, Dunn & Crutcher LLP

11