THEANE EVANGELIS, SBN 243570
   TEvangelis@gibsondunn.com
MADELEINE F. MCKENNA, SBN 316088
   MMcKenna@gibsondunn.com
EMILY SAUER, SBN 324695
   ESauer@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California  90071-3197
Telephone:    213.229.7000
Facsimile:     213.229.7520

MEGAN COONEY, SBN 295174
   MCooney@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, California  92612-4412
Telephone:    949.451.3800
Facsimile:     949.451.4220

*Attorneys for Defendant PetSmart LLC*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| BREANN SCALLY,<br><br>　　　　Plaintiff, on behalf of herself and all others similarly situated,<br><br>　　v.<br><br>PETSMART LLC,<br><br>　　　　Defendant. | CASE NO. 4:22-cv-06210-YGR<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:  January 24, 2023<br>Hearing Time: 2:00 p.m.<br>Hearing Place: Courtroom 1, 4th Floor<br>Judge:　　　Hon. Yvonne Gonzalez Rogers |

1   **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2          **PLEASE TAKE NOTICE THAT** on January 24, 2023, at 2:00 p.m., or as soon thereafter as

3   the matter may be heard before the Honorable Yvonne Gonzalez Rogers in Courtroom 1 of the United

4   States District Court for the Northern District of California in the Oakland Courthouse, 1301 Clay

5   Street, Oakland, CA 94612, Defendant PetSmart LLC ("PetSmart") will and hereby does move this

6   Court for an order compelling arbitration on an individual, non-class basis of the claims asserted by

7   Plaintiff BreAnn Scally ("Plaintiff").

8          This motion is brought on the ground that Plaintiff's claims against PetSmart are subject to a

9   valid and enforceable arbitration agreement under the Federal Arbitration Act ("FAA") and,

10  alternatively, the Delaware Uniform Arbitration Act, which requires Plaintiff to arbitrate her claims on

11  an individual basis only.  First, under the FAA, because the parties' arbitration agreement delegates

12  questions of arbitrability to the arbitrator, this Court need only confirm that the parties have a valid

13  arbitration agreement and that Plaintiff's claims fall within the scope of that agreement.  *See*, *e.g.*, *Rent-*

14  *A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010); *Mohamed v. Uber Techs., Inc.*, 848 F.3d

15  1201, 1208–12 (9th Cir. 2016).  Multiple courts have enforced delegation clauses identical or similar

16  to the provision at issue here, and the arbitration agreement applies broadly to all employment-related

17  disputes, including Plaintiff's claims alleging that PetSmart unlawfully subjected her to a training

18  repayment agreement and did not provide her with lawful meal and rest breaks.  Accordingly, the Court

19  should enforce the parties' arbitration agreement according to its terms, compel Plaintiff to arbitrate

20  her claims against PetSmart on an individual basis, and dismiss any remaining claims pending before

21  the Court.  Second, even if the Court does not apply the FAA here, it should compel Plaintiff's claims

22  to arbitration under Delaware law pursuant to the arbitration agreement's "Chosen State Law"

23  provision.

24          PetSmart's motion is based on this Notice of Motion and Motion, the accompanying

25  Memorandum of Points and Authorities, the concurrently filed Declaration of Jennifer Offner and

26  attached exhibits, any other matters of which the Court may take judicial notice, other documents on

27  file in this action, and any oral argument of counsel.

28

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
CASE NO. 4:22-CV-06210-YGR

DATED: November 23, 2022

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Theane Evangelis*

Theane Evangelis
Megan Cooney
Madeleine F. McKenna
Emily Sauer

*Attorneys for Defendant PetSmart LLC*

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................................. 1

II.   BACKGROUND ................................................................................................................. 2

    A.   PetSmart's Interstate Operations and the Dispute Resolution Policy ........................... 2

    B.   Plaintiff's Claims in This Action ................................................................................... 5

III.  ARGUMENT ...................................................................................................................... 5

    A.   The FAA Requires Individual Arbitration of Plaintiff's Claims ................................. 6

    B.   All Other Questions Are Delegated to the Arbitrator .................................................... 7

    C.   Even Without Delegation, the FAA's Gateway Arbitrability Criteria Are Met
       Here ............................................................................................................................... 9

        1.   There Exists a Valid Agreement to Arbitrate Between PetSmart and
           Plaintiff ........................................................................................................... 9

        2.   The Arbitration Provision Covers This Dispute .............................................. 11

    D.   Even if the FAA Does Not Apply, the Court Should Compel Arbitration of
       Plaintiff's Claims Under State Law .............................................................................. 13

IV.   CONCLUSION ................................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*3850 & 3860 Colonial Blvd., LLC v. Griffin,*
   2015 WL 894928 (Del. Ch. Feb. 26, 2015) ...................................................................14

*Allied-Bruce Terminix Cos. v. Dobson,*
   513 U.S. 265 (1995) ...........................................................................................................6

*AT&T Techs., Inc. v. Commc'ns Workers of Am.,*
   475 U.S. 643 (1986) .........................................................................................................11

*Burger v. Northrop Grunman Sys. Corp.,*
   2021 WL 8322270 (C.D. Cal. Oct. 27, 2021) ...............................................................12

*Cabela's LLC v. Wellman,*
   2018 WL 5309954 (Del. Ch. Oct. 26, 2018) ................................................................10

*Capriole v. Uber Techs., Inc.,*
   7 F.4th 854 (9th Cir. 2021) .............................................................................................12

*Carlson v. Hallinan,*
   925 A.2d 506 (Del. Ch. 2006) ..........................................................................................9

*Circuit City Stores, Inc. v. Adams,*
   532 U.S. 105 (2001) ...........................................................................................................6

*Clifford v. Quest Software Inc.,*
   38 Cal. App. 5th 745 (2019) ...........................................................................................12

*Dean Witter Reynolds, Inc. v. Byrd,*
   470 U.S. 213 (1985) ...........................................................................................................6

*Devries v. Experian Info. Sols., Inc.,*
   2017 WL 2377777 (N.D. Cal. June 1, 2017) ...........................................................12, 13

*DIRECTV, Inc. v. Imburgia,*
   577 U.S. 47 (2015) .............................................................................................................9

*Eagle Force Holdings, LLC v. Campbell,*
   187 A.3d 1209 (Del. 2018) .............................................................................................10

*Edelist v. MBNA Am. Bank,*
   790 A.2d 1249 (Del. Super. 2001) ..................................................................................14

*Epic Sys. Corp. v. Lewis,*
   138 S. Ct. 1612 (2018) ...................................................................................................1, 6

Gibson, Dunn &
Crutcher LLP

*Evans v. PayPal, Inc.*,
   2022 WL 1813993 (N.D. Cal. June 2, 2022) ...............................................................9, 13

*GTSI Corp. v. Eyak Tech., LLC*,
   10 A.3d 1116 (Del. Ch. 2010) ...................................................................................14

*Hampton v. PetSmart LLC*,
   2022 WL 2288308 (C.D. Cal. Mar. 18, 2022) .......................................................1, 7, 8

*Hearon v. AstraZeneca LP*,
   2003 WL 21250640 (E.D. Pa. Mar. 24, 2003) ...........................................................14

*Hodges v. Comcast Cable Commc'ns, LLC*,
   21 F.4th 535 (9th Cir. 2021)......................................................................................12

*James & Jackson, LLC v. Willie Gary, LLC*,
   906 A.2d 76 (Del. 2006) ..........................................................................................2, 6

*Julian v. Julian*,
   2009 WL 2937121 (Del. Ch. Sept. 9, 2009) ..............................................................14

*Lamps Plus, Inc. v. Varela*,
   139 S. Ct. 1407 (2019) .................................................................................................1

*McGill v. Citibank, N.A.*,
   2 Cal. 5th 945 (2017) .................................................................................................12

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017)..........................................................................................10

*Mohamed v. Uber Techs., Inc.*,
   848 F.3d 1201 (9th Cir. 2016).............................................................................1, 8, 10

*Momot v. Mastro*,
   652 F.3d 982 (9th Cir. 2011)........................................................................................8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983).....................................................................................................6, 9

*Mundi v. Union Sec. Life Ins. Co.*,
   555 F.3d 1042 (9th Cir. 2009).......................................................................................9

*Newell Rubbermaid Inc. v. Storm*,
   2014 WL 1266827 (Del. Ch. Mar. 27, 2014)................................................................10

*PacifiCare Health Sys. v. Book*,
   538 U.S. 401 (2003).....................................................................................................9

*Pick v. Discover Fin. Servs., Inc.*,
   2001 WL 1180278 (D. Del. Sept. 28, 2001) ................................................................14

*Rent-A-Center, W., Inc. v. Jackson*,
  561 U.S. 63 (2010) ...................................................................................................1, 6, 7, 13

*Revitch v. Uber Techs., Inc.*,
  2018 WL 6340755 (C.D. Cal. Sept. 5, 2018) ......................................................................12

*Rivera v. PetSmart, Inc.*,
  2018 WL 5045380 (E.D. Pa. Oct. 17, 2018) ......................................................................1, 7

*Rogers v. Lyft*,
  452 F. Supp. 3d 904 (N.D. Cal. 2020) ..................................................................................13

*Rosenthal v. Great W. Fin. Secs. Corp.*,
  14 Cal. 4th 394 (1996) ...........................................................................................................11

*SBC Interactive Inc. v. Corp. Media Partners*,
  714 A.2d 758 (Del. 1998) .......................................................................................................14

*Strotz v. Dean Witter Reynolds, Inc.*,
  223 Cal. App. 3d 208 (1990) ..................................................................................................11

*Uhl v. Komatsu Forklift Co.*,
  512 F.3d 294 (6th Cir. 2008).....................................................................................................7

*Zeleny v. Thompson Homes at Centreville, Inc.*,
  2006 WL 2382829 (Del. Super. July 10, 2006) ....................................................................11

**STATUTES**

9 U.S.C. § 2 ...............................................................................................................................6, 7

9 U.S.C. § 4 ...............................................................................................................................13

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff BreAnn Scally is a former PetSmart employee who agreed to resolve any disputes relating to the terms of her employment with PetSmart in arbitration on an individual basis.  In breach of this agreement, Plaintiff has filed a putative class action Complaint against PetSmart on behalf of herself and all pet groomers and bathers in California who have worked for PetSmart in the last four years.  The parties' binding agreement, the Federal Arbitration Act, and decades of U.S. Supreme Court precedent require Plaintiff to resolve her disputes with PetSmart on an individual basis in arbitration.

*First*, this Court should compel Plaintiff's claims to arbitration as long as it determines the parties have agreed to arbitrate.  Because the arbitration agreement contains a valid delegation clause that delegates questions of arbitrability to the arbitrator, the Court's jurisdiction is limited to confirming that the parties have an arbitration agreement and then compelling individualized arbitration.  *See*, *e.g.*, *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208–12 (9th Cir. 2016).  Here, there can be no doubt that the parties have an enforceable agreement to arbitrate, as PetSmart's arbitration agreement has been enforced by multiple courts.  *See, e.g.*, *Hampton v. PetSmart LLC*, 2022 WL 2288308, at *3 (C.D. Cal. Mar. 18, 2022); *Rivera v. PetSmart, Inc.*, 2018 WL 5045380, at *1 (E.D. Pa. Oct. 17, 2018).  Moreover, the agreement also plainly encompasses the claims asserted in the Complaint, as it applies broadly to "all employment-related claims" between Plaintiff and PetSmart, including those "arising out of or related to [Plaintiff's] actual or alleged employment with or work for [PetSmart,] . . . the termination of such employment or work, and/or any of the terms, conditions, or benefits of such employment or work (including any wage and hour issues)."  Offner Decl. Ex. 1, ¶ 3.  As the U.S. Supreme Court has repeatedly held, the FAA requires courts to enforce arbitration agreements according to their terms, and the parties' agreement to arbitrate must be enforced here.  *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415–19 (2019); *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018).

*Second*, even if the FAA did not apply here (it does), the Court should still compel Plaintiff's claims to arbitration under Delaware law pursuant to the arbitration agreement's "Chosen State Law"

Gibson, Dunn & Crutcher LLP

DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
CASE NO. 4:22-CV-06210-YGR

provision (Offner Decl. Ex. 1, ¶ 20), as "Delaware arbitration law mirrors federal [arbitration] law" (*James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 79 (Del. 2006)).

Accordingly, the Court should compel Plaintiff to arbitrate her claims on an individual basis as the arbitration agreement's plain language requires.

## II.      BACKGROUND

### A.      PetSmart's Interstate Operations and the Dispute Resolution Policy

PetSmart operates a chain of pet-centric retail stores in North America with more than 1,400 stores in the United States.  Offner Decl. ¶ 3.  In California alone, there are over 100 PetSmart stores. *Id.*  In addition to selling retail pet products and offering pet lodging, training, and adoption services, PetSmart stores also provide grooming to millions of pets each year.  *Id.*; *see* Dkt. 1-2, Ex. B, ¶ 1.  To provide these grooming services, PetSmart hires groomers, many of whom attend PetSmart's Grooming Academy—a four-week, 160-hour-long program that provides hands-on training and teaches groomers the basics of pet grooming.  Offner Decl. ¶ 4.

Beginning in 2010 and through the present (including when Plaintiff applied to be, and was hired as, an employee of PetSmart), when applicants apply to work for PetSmart, PetSmart provides them with access to Cadient, a web-based program where applicants are required to complete an electronic employment application and sign various agreements related to their potential employment. Offner Decl. ¶ 5.  To access Cadient, PetSmart applicants create their own Cadient accounts with a personalized username and confidential password.  *Id.* ¶ 6.  Once applicants enter their username and password on the login screen, they are taken to the first part of the online employment application titled, "Pre-Application Consents and Disclosures."  *Id.* ¶ 6 & Exs. 2–5.  The Pre-Application Consents and Disclosures inform applicants that they will need to complete their employment application electronically and that the application contains a "Dispute Resolution Policy that provides for binding individual arbitration," which applicants can request to review "on paper instead of electronically."  *Id.* ¶ 7 & Ex. 3.  At the top of the fourth page of "Pre-Application Consents and Disclosures," the screen states in bolded and underlined text, "**<u>PLEASE CLICK THE LINK BELOW TO REVIEW THE PETSMART DISPUTE RESOLUTION POLICY</u>**" with a hyperlink immediately below it to

PetSmart's publicly available Dispute Resolution Policy ("DRP").  *Id.* ¶ 9 & Ex. 5.  Applicants can review the DRP at their leisure.  *Id.* ¶ 9.

At the top of the very first page, the DRP states in bold, capitalized letters that unless the applicant or employee exercises her right to opt out, she must resolve any disputes with PetSmart in individual arbitration, voluntary mediation, or small claims court, and that the applicant or employee waives the right to bring suit on behalf of other employees.  It provides:

> **PLEASE READ THIS DISPUTE RESOLUTION POLICY ("DRP") CAREFULLY. UNLESS YOU PROPERLY ELECT TO NOT BE BOUND BY THIS DRP, AND EXCEPT AS SET FORTH BELOW, ANY COVERED DISPUTES (AS DEFINED BELOW) MUST BE RESOLVED ONLY BY VOLUNTARY MEDIATION, MANDATORY FINAL AND BINDING INDIVIDUAL ARBITRATION, OR IN A SMALL CLAIMS COURT ACTION, WHICH REPLACE THE RIGHT TO OTHERWISE GO TO COURT OR AN ADMINISTRATIVE AGENCY, INCLUDING THE RIGHT TO A JUDGE OR JURY TRIAL, TO AN ADMINISTRATIVE HEARING, AND TO BRING OR PARTICIPATE IN A REPRESENTATIVE ACTION OR PAGA ACTION (BOTH AS DEFINED BELOW).**

Offner Decl. Ex. 1 at 1.  The DRP further states that it applies to both PetSmart and its applicants and employees, and that its purpose is to "resolv[e] covered employment-related disputes quickly and fairly and in a mutually beneficial way" to all parties.  *Id.*, ¶¶ 1–2.

In addition to the first page of the agreement, the DRP also makes clear that unless the parties elect to resolve their dispute through mediation or a small claims court action, the parties agree that certain covered disputes must be resolved "exclusively by final and binding individual arbitration in accordance with the terms of this DRP."  Offner Decl. Ex. 1, ¶¶ 5–7.  The parties also "waive any and all rights to bring or participate in any type" of class, collective, or representative action.  *Id.*, ¶ 11.  In relevant part, the DRP's terms apply to "any individual who has applied for employment with [PetSmart], who is actually or allegedly employed by [PetSmart], or whose actual or alleged employment with [PetSmart] terminates after becoming bound by this DRP."  *Id.*, ¶ 2.  "Covered disputes" include "all employment-related claims, causes of action, or other disputes" between PetSmart and the applicant, current employee, or former employee "based on any legal, equitable, or other ground or theory," as well as disputes "arising out of related to" a current or former employee's "actual or alleged employment with or work for [PetSmart], . . . the termination of such employment

or work, and/or any of the terms, conditions, or benefits of such employment or work (including any wage and hour issues)." *Id.*, ¶ 3. The DRP also contains a delegation clause, providing that all "issues of arbitrability[,] such as the formation, interpretation, applicability or enforceability of this DRP" "must only be heard and decided by the appointed arbitrator." *Id.*

The agreement explicitly provides that the DRP and "any court or other proceedings concerning arbitration under this DRP are expressly subject to and governed by the Federal Arbitration Act, 9 U.S.C. section 1 et seq. (the 'FAA')." Offner Decl. Ex. 1, ¶ 20. But "[t]o the extent that state law is applicable" to the DRP, "then the laws of the State of Delaware, where PetSmart LLC is incorporated, will be the applicable state law, as applicable and without regard to or application of any conflict of laws principles (the 'Chosen State Law')." *Id.*

The DRP affords applicants and employees an unfettered right to opt out of arbitration and/or its Chosen State Law provision by emailing, faxing, mailing, or hand delivering written notice within 30 days after receiving notice or a copy of the DRP that (1) includes the individual's name, mailing address, phone number, email address, and employee ID number; (2) states that the individual elects not to be bound by the DRP and/or the Chosen State Law provision; and (3) is signed and dated by the individual. Offner Decl. ¶ 11 & Ex. 1, ¶ 21.

Once applicants have reviewed the DRP and the accompanying "PetSmart Dispute Resolution Policy Acknowledgements," they are prompted to click one of two buttons—the first states, "I agree," and the second states, "I do not agree and wish to end my application." Offner Decl. ¶ 9 & Ex. 5. If applicants click, "I agree," they can then click a button labeled, "Next" at the bottom of the screen. *Id.* After applicants complete these Pre-Application Consents and Disclosures, they are prompted to complete their employment application by attaching their resume, answering questions about their employment and education history, taking a role assessment for the position to which they are applying, and submitting their application. *Id.* ¶ 10. Applicants and employees can return to the publicly available webpage to review the DRP at any time. *Id.* ¶ 9.

PetSmart's records show that Plaintiff reviewed and electronically signed the DRP through her Cadient account on December 22, 2020. Offner Decl. ¶ 12 & Ex. 6. Although Plaintiff had the opportunity to opt out of the DRP and its Chosen State Law provision, she chose not to do so. *Id.* ¶ 14.

**B.      Plaintiff's Claims in This Action**

Notwithstanding her agreement to the DRP, Plaintiff filed a putative class action Complaint against PetSmart in San Mateo Superior Court on July 28, 2022, seeking to represent multiple classes and subclasses of California PetSmart employees, including "[a]ll individuals who have worked for PetSmart" who have attended PetSmart's Grooming Academy and "are or have been subject to a training repayment agreement" and "[a]ll individuals who have worked as a pet groomer or bather" within four years of her filing the Complaint. *See* Dkt. 1-2, Ex. B, ¶ 65.

Plaintiff alleges that PetSmart unlawfully subjected groomers to a training repayment agreement for attending the Grooming Academy, in violation of California Labor Code §§ 2802, 2804 (failure to indemnify employees for necessary expenditures), California Business & Professions Code §§ 17200, 17500 (unlawful conduct and false advertising), and California Civil Code § 1750 (Consumer Legal Remedies Act) and § 1788 *et seq.* (Rosenthal Fair Debt Collection Practices Act). Dkt. 1-2, Ex. B, ¶¶ 72–146, 155–58. Plaintiff also alleges a claim against PetSmart for failing to provide its employees "with the opportunity to take compliant off-duty meal periods" and "off-duty rest breaks" in violation of California Labor Code §§ 226.7 and 512 and Wage Order 7. *Id.*, ¶¶ 147–54. Plaintiff seeks statutory and punitive damages, equitable monetary relief such as restitution and disgorgement, private injunctive relief, and a "public injunction to prevent [PetSmart] from further disseminating its false statements about [the] Grooming Academy to the public" and from using its training repayment program unlawfully. *Id.*, ¶ 163.

PetSmart removed the action to this Court on October 18, 2022. *See* Dkt. 1.

### III.      ARGUMENT

This Court should hold Plaintiff to her contractual obligation to arbitrate and order her to submit each of her claims asserted in the Complaint to individual arbitration under the FAA or, in the alternative, Delaware state law. Under the FAA, a court is typically limited to considering only two "gateway" issues before compelling arbitration: (1) whether there is a valid arbitration agreement; and (2) whether it covers the dispute. Here, however, the DRP contains a delegation clause that clearly and unmistakably provides that those gateway issues should be resolved by the arbitrator. Under binding Supreme Court precedent, this delegation clause must be enforced absent a showing that the delegation

clause is *itself* unenforceable, which it is not.  *See, e.g.*, *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010).  In any event, both gateway issues are easily satisfied here.  Finally, even if the Court were to conclude that the FAA does not apply, it should still compel arbitration under the Delaware Uniform Arbitration Act, which mirrors the FAA.  *See, e.g.*, *James & Jackson, LLC v. Willie Gary, LLC*, 906 A.2d 76, 79 (Del. 2006).

## A.     The FAA Requires Individual Arbitration of Plaintiff's Claims

"The FAA reflects the fundamental principle that arbitration is a matter of contract."  *Rent-A-Center*, 561 U.S. at 67.  Seeking to "overcome judicial hostility to arbitration agreements" (*Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 272 (1995)), the statute embodies a "liberal federal policy favoring arbitration" (*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  Because the statute is designed to "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible," courts must resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration."  *Moses H. Cone*, 460 U.S. at 22, 24–25.

The "primary substantive provision of the Act" is Section 2.  *Rent-A-Center*, 561 U.S. at 67 (citation omitted).  Section 2 provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114 (2001) ("'[I]nvolving commerce' evidence[s] the congressional intent to regulate to the full extent of [Congress's] commerce power.").  Section 2 "requires courts to enforce [arbitration agreements] according to their terms."  *Rent-A-Center*, 561 U.S. at 67; *accord Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (enforcing an arbitration agreement "according to its terms" includes agreements to use individualized proceedings and waive class action procedures).  "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).  Consistent with these principles, Plaintiff's claims should be arbitrated pursuant to the plain and unambiguous terms of the DRP.

The FAA governs this dispute because, as other courts have found, PetSmart "is undisputedly engaged in interstate commerce." *Hampton v. PetSmart LLC*, 2022 WL 2288308, at \*2 (C.D. Cal. Mar. 18, 2022); *see also* Offner Decl. ¶ 3 (PetSmart has over 1,400 retail stores across the United States); *id.* Ex. 1, ¶ 20 ("[PetSmart] and Covered Individuals agree that [PetSmart] is engaged in transactions involving interstate commerce."). The FAA also governs this dispute because the DRP explicitly *says* that it does. Offner Decl. Ex. 1, ¶ 20. Courts have enforced arbitration agreements under the FAA where the agreement stipulates to the statute's application. *See, e.g., Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 302–03 (6th Cir. 2008).

Because the parties here entered into a written contract "evidencing a transaction involving commerce" to settle their disputes in arbitration, that agreement must be enforced under Section 2 of the FAA. 9 U.S.C. § 2. Indeed, multiple courts have enforced PetSmart's DRP or another materially similar version under the FAA. *See, e.g., Hampton*, 2022 WL 2288308, at \*1, \*3 (compelling plaintiff's claims "arising out of her termination" with PetSmart to arbitration because she signed identical arbitration agreement that "clearly and unmistakably delegates threshold questions of arbitrability to the arbitrator"); *Rivera v. PetSmart, Inc.*, 2018 WL 5045380, at \*1, \*6 (E.D. Pa. Oct. 17, 2018) (holding plaintiff's claims were "subject to arbitration" under similar broad language "requir[ing] the parties to arbitrate 'any employment related claim under federal, state, or local law'"). This Court should do the same, as Plaintiff can offer no compelling argument to depart from these well-reasoned decisions.

## B.     All Other Questions Are Delegated to the Arbitrator

The Supreme Court has "recognized that parties can agree to arbitrate gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center*, 561 U.S. at 68–69 (quotation marks omitted). Like "any other" provision in an arbitration agreement, these "delegation provision[s]" must be "enforce[d] . . . according to their terms." *Id.* at 67, 70.

Here, the DRP contains a clear and unmistakable delegation clause stating that all "issues of arbitrability[,] such as the formation, interpretation, applicability or enforceability of this DRP" "must only be heard and decided by the appointed arbitrator." Offner Decl. Ex. 1, ¶ 3. In evaluating this

*exact* language, another District Court in California concluded that PetSmart and the plaintiff in that case "clearly and unmistakably delegate[d] threshold questions of arbitrability to the arbitrator." *Hampton*, 2022 WL 2288308, at *3. The Ninth Circuit has likewise upheld nearly identical language—delegating disputes about "the enforceability, revocability or validity of the Arbitration Provision" to an arbitrator—as sufficiently clear and unmistakable so as to divest the court of jurisdiction over those questions. *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208–09 (9th Cir. 2016) (granting defendant's motion to compel arbitration and delegating threshold enforceability issues to arbitrator); *see also Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (holding that agreement delegating disputes about "'the validity or application of any of the provisions of' the arbitration clause . . . clearly and unmistakably" delegated threshold questions of arbitrability to the arbitrator).

To the extent that Plaintiff suggests the delegation clause in the DRP is unenforceable, the *Hampton* court has already rejected that argument. There, the court held that the plaintiff's argument that the delegation provision "is not clear and unambiguous" was "at best mistaken and at worst disingenuous." 2022 WL 2288308, at *2–3. The plaintiff had argued that it was unclear which rules would apply in arbitration proceedings, but the "DRP expressly states that the Federal Rules of Civil Procedure and Evidence apply in any arbitration proceedings." *Id.* at *3; *see also* Offner Decl. Ex. 1, ¶ 10. And in response to the plaintiff's argument that the DRP "delegates threshold questions of arbitrability to the court" under the Delaware Uniform Arbitration Act, the court held that the plaintiff was merely "attempt[ing] to create ambiguity where none exists" since "[t]he DRP unambiguously states that the FAA governs and allows for application of Delaware law" only when the FAA does not apply. *Hampton*, 2022 WL 2288308, at *3. Additionally, although the plaintiff challenged the DRP as unconscionable, because she did "not challenge the delegation provision" specifically as unconscionable, the Court "[did] not address this challenge as it must be brought before the arbitrator." *Id.* So too here; because the FAA governs this dispute and because the DRP includes a delegation clause, there is no other work for the Court to do but compel arbitration. *See Mohamed*, 848 F.3d at 1208–12.

Gibson, Dunn & Crutcher LLP

**C.      Even Without Delegation, the FAA's Gateway Arbitrability Criteria Are Met Here**

Even if the Court considers questions concerning the scope or enforceability of the DRP (it should not), the FAA still requires compelling individual arbitration of Plaintiff's claims.  Under the FAA, the only two "gateway" issues to determine whether to compel arbitration, absent a delegation clause, are both satisfied here.  First, the DRP is a valid agreement to arbitrate between the parties.  Second, the DRP plainly covers the disputes raised by Plaintiff's Complaint.  *PacifiCare Health Sys. v. Book*, 538 U.S. 401, 407 n.2 (2003); *see also Moses H. Cone*, 460 U.S. at 24–25 ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

**1.      There Exists a Valid Agreement to Arbitrate Between PetSmart and Plaintiff**

"In determining whether parties have agreed to arbitrate a dispute, [the Court] appl[ies] general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009) (internal quotation marks and citation omitted).   In determining which state law applies, courts routinely enforce arbitration agreements' choice-of-law provisions. *See, e.g.*, *Evans v. PayPal, Inc.*, 2022 WL 1813993, at *3 (N.D. Cal. June 2, 2022), *appeal filed*, No. 22-15979 (9th Cir. July 1, 2022) ("The Court agrees with [the defendant] that the Delaware choice of law provision [in the arbitration agreement] is enforceable."); *see also DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 53–54 (2015) ("[T]he [FAA] allows parties to an arbitration contract considerable latitude to choose what law governs some or all of its provisions."). Here, the parties agreed that "[t]o the extent that state law is applicable under the FAA . . . then the laws of the State of Delaware . . . will be the applicable state law . . . without regard to or application of any conflict of laws principles."  Offner Decl. Ex. 1, ¶ 20.

Under Delaware law, "[t]hree elements are necessary to prove the existence of an enforceable contract: 1) the intent of the parties to be bound by it, 2) sufficiently definite terms and 3) consideration." *Carlson v. Hallinan*, 925 A.2d 506, 524 (Del. Ch. 2006).  The DRP meets all of these requirements.

*First*, Plaintiff had ample opportunity to review the DRP's terms and affirmatively acknowledged her intent to be bound by them by electronically signing the DRP.  *See* Offner Decl.

¶ 12 & Ex. 6; *Cabela's LLC v. Wellman*, 2018 WL 5309954, at *7 n.86 (Del. Ch. Oct. 26, 2018) ("Delaware law allows digital acceptance of the terms of an agreement."); *Newell Rubbermaid Inc. v. Storm*, 2014 WL 1266827, at *6–7 (Del. Ch. Mar. 27, 2014) (plaintiff manifested assent by clicking "Accept" for online contract); *cf. Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75–81 (2d Cir. 2017) (vacating order denying motions to compel arbitration after holding that availability of a contract "only by hyperlink does not preclude a determination of reasonable notice" and that the plaintiff "unambiguously manifested his assent to [the contract]"). Plaintiff could also review the DRP any time after signing it, as it is publicly available on PetSmart's website. Offner Decl. ¶ 9. And, even if all this were not enough, PetSmart provided Plaintiff an unfettered right to opt out of the DRP within 30 days after receiving notice of its terms, yet she did not do so, further evidencing her consent to be bound by its terms. *Id.* ¶¶ 11, 14 & Ex. 1, ¶ 21; *Mohamed*, 848 F.3d at 1211 (opt-out provision made arbitration agreement "not adhesive," which "support[ed the Court's] holding that the delegation provision [was] not unconscionable").

*Second*, there can be no dispute that the DRP contains sufficiently definite terms. "A contract is sufficiently definite and certain to be enforceable if the court can—based upon the agreement's terms and applying proper rules of construction and principles of equity—ascertain what the parties have agreed to do." *Eagle Force Holdings, LLC v. Campbell*, 187 A.3d 1209, 1232 (Del. 2018). Here, it is clear that the parties agreed to submit all employment-related disputes, including Plaintiff's claims against PetSmart, to individual arbitration. The very top of the DRP states clearly in bold, capital letters that unless employees opt out of the DRP, then "**ANY COVERED DISPUTES . . . MUST BE RESOLVED ONLY BY VOLUNTARY MEDIATION, MANDATORY FINAL AND BINDING INDIVIDUAL ARBITRATION, OR IN A SMALL CLAIMS COURT ACTION, WHICH REPLACE THE RIGHT TO OTHERWISE GO TO COURT OR AN ADMINISTRATIVE AGENCY . . . .**" Offner Decl. Ex. 1 at 1. It goes on to explain that the DRP applies to "any individual who has applied for employment with [PetSmart], who is actually or allegedly employed by [PetSmart], or whose actual or alleged employment with [PetSmart] terminates after becoming bound by this DRP." *Id.*, ¶ 2. And "covered disputes" specifically includes those "arising out of related to" a current or former employee's "actual or alleged employment with or work for [PetSmart], . . . the termination of

such employment or work, and/or any of the terms, conditions, or benefits of such employment or work (including any wage and hour issues)." *Id.*, ¶ 3.

*Third*, the DRP is supported by valid consideration, as the parties both agreed to arbitrate any employment-related disputes between them. "Where an agreement to arbitrate exists, the parties' mutual promises to forego a judicial determination and to arbitrate their disputes provide consideration for each other." *Strotz v. Dean Witter Reynolds, Inc.*, 223 Cal. App. 3d 208, 216 (1990), *overruled on other grounds by Rosenthal v. Great W. Fin. Secs. Corp.*, 14 Cal. 4th 394 (1996); *see also Zeleny v. Thompson Homes at Centreville, Inc.*, 2006 WL 2382829, at *3 (Del. Super. July 10, 2006) (compelling arbitration where, "[i]n consideration for this [contractual warranty] coverage, plaintiffs agreed to binding arbitration as an exclusive remedy for any and all disputes"). The DRP easily satisfies this element, as it provides that "[t]his DRP applies to [PetSmart] and all Covered Individuals," including applicants, current employees, and former employees alike. Offner Decl. Ex. 1, ¶ 2.

Therefore, all of the elements for the valid formation of an agreement to arbitrate exist here.

## 2.     The Arbitration Provision Covers This Dispute

The second "gateway" issue—whether the agreement covers the parties' dispute—also favors arbitration here. The DRP plainly covers all of the claims asserted in Plaintiff's Complaint because each claim "aris[es] out of or relat[es] to . . . the terms, conditions, or benefits of [her] employment or work (including any wage and hour issues)." Offner Decl. Ex. 1, ¶ 3. Here, Plaintiff alleges that, as part of her training to be promoted from a bather to a groomer, she "began [the] Grooming Academy," which required her to sign a "Grooming Academy Training[] Agreement and Authorization for Deduction from Wages." Dkt. 1-2, Ex. B., ¶¶ 47–48. With the exception of one claim, all of Plaintiff's claims stem from allegations that this agreement was an unlawful term and condition of Plaintiff's employment—falling squarely within the DRP's defined scope. *Id.*, ¶¶ 72–146, 155–58. And Plaintiff's other claim, for failure to provide meal and rest breaks under California law (*id.*, ¶¶ 147–54), is also covered by the DRP, which specifically covers any disputes regarding "wage and hour issues" (Offner Decl. Ex. 1, ¶ 3). To the extent there is any question about whether Plaintiff's claims are covered by the DRP, any "doubts should be resolved in favor of coverage." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *see also id.* (motion to compel arbitration must

Gibson, Dunn & Crutcher LLP

DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
CASE NO. 4:22-CV-06210-YGR

be granted when it cannot "be said with positive assurance that the arbitration [agreement] is not susceptible of an interpretation that covers the asserted dispute").

Plaintiff cannot avoid this outcome by claiming that her supposed claim for "public injunctive relief" bars enforcement of the DRP here.  *See* Dkt. 1-2, Ex. B., ¶¶ 92, 109, 119, 130, 135, 146, 163.  *First*, Plaintiff's purported request for a public injunction is not, in fact, a request for public injunctive relief because "[r]elief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff—does not constitute public injunctive relief." *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 955 (2017); *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 542 (9th Cir. 2021); *Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 870 (9th Cir. 2021).  Here, Plaintiff seeks relief that benefits primarily herself and putative class members who have worked for PetSmart as bathers or groomers and have been subject to PetSmart's training repayment agreement through the Grooming Academy.  Plaintiff requests an injunction to prevent PetSmart from subjecting its groomers to allegedly unlawful training repayment agreements (Dkt. 1-2, Ex. B., ¶¶ 78, 85, 92, 109, 119, 130, 135), and to prevent PetSmart from sending certain communications to its employees about its Grooming Academy (*id.*, ¶¶ 140–46).  If granted, Plaintiff's request for relief would exclusively benefit Plaintiff and the putative class of "[a]ll individuals who have worked for PetSmart in California, received training from PetSmart's Grooming Academy, and are or have been subject to a training repayment agreement within the four years prior to the filing of this Complaint"—not the public at large.  *Id.*, ¶ 65; *see also Capriole*, 7 F.4th at 870 (holding plaintiffs' sick leave claim was private where it was "overwhelmingly directed at [p]laintiffs and other rideshare drivers"); *Burger v. Northrop Grunman Sys. Corp.*, 2021 WL 8322270, at *9 (C.D. Cal. Oct. 27, 2021) (holding that plaintiff sought primarily "to redress injury to himself and to [other] employees" without providing any "real benefit to the public at large"); *Clifford v. Quest Software Inc.*, 38 Cal. App. 5th 745, 753–54 (2019) (similar).  Therefore, Plaintiff seeks only private injunctive relief—not public injunctive relief.

*Second*, in any event, "where there is a delegation provision, as there is here, the public injunctive relief question is reserved to the arbitrator." *Revitch v. Uber Techs., Inc.*, 2018 WL 6340755, at *5–6 (C.D. Cal. Sept. 5, 2018); *Devries v. Experian Info. Sols., Inc.*, 2017 WL 2377777, at *3 (N.D.

Cal. June 1, 2017) ("Whether [the] arbitration agreement purports to waive [the plaintiff's] right to seek public injunctive relief . . . and, if so, what impact this has on the enforceability of the arbitration agreement as a whole, is for the arbitrator to decide."); *see* Offner Decl. Ex. 1, ¶ 3.  Where, as here, "the parties agreed that the arbitrator would get the first stab at [deciding the merits of Plaintiff's claims], the issuance of [an] injunction would reclaim for the judiciary a matter assigned by the parties to arbitration." *Rogers v. Lyft*, 452 F. Supp. 3d 904, 912 (N.D. Cal. 2020).  In short, deciding whether Plaintiff can seek a public injunction "would displace, rather than preserve, the arbitration process." *Id.* at 913.  Accordingly, the Court need not consider any argument by Plaintiff about whether her claims for public injunctive relief render the DRP unenforceable.

*     *     *

Again, the Court need not—and should not—confront these "gateway" issues.  Plaintiff agreed to arbitrate disputes relating to her employment with PetSmart on an individual basis (Offner Decl. ¶ 12 & Ex. 6), and the DRP contains a valid delegation clause (*id.* Ex. 1, ¶ 3).  However, whether presented to the arbitrator or decided here, the DRP is a valid agreement to arbitration that covers the parties' dispute.  *See* 9 U.S.C. § 4; *Rent-A-Center*, 561 U.S. at 68–70.  This Court should therefore compel to arbitration all of Plaintiff's claims.

### D.   Even if the FAA Does Not Apply, the Court Should Compel Arbitration of Plaintiff's Claims Under State Law

If the Court determines that the FAA does not govern the DRP (it does), the Court should compel Plaintiff to arbitrate her claims under Delaware law.  As noted above, the DRP includes a Chosen State Law provision, which specifies that if a court "decides that this DRP . . . [is] not subject to and governed by the FAA, then the laws of the State of Delaware . . . will be the applicable state law, as applicable and without regard to or application of any conflict of laws principles."  Offner Decl. Ex. 1, ¶ 20; *Evans*, 2022 WL 1813993, at *3 (enforcing arbitration agreement's Delaware choice-of-law provision).

Under Delaware law, the outcome is the same—Plaintiff's claims should be compelled to arbitration on an individual basis.  The Delaware Uniform Arbitration Act is substantially similar to the FAA.  In fact, courts have observed that "the similarity between Delaware's Uniform Arbitration

Act and the FAA, both in terms of plain language and the policy goals behind each statute, is so strong that the analysis *would not change* upon an application of Delaware law instead of federal law." *Hearon v. AstraZeneca LP*, 2003 WL 21250640, at *4 n.1 (E.D. Pa. Mar. 24, 2003) (emphasis added); *see also, e.g.*, *3850 & 3860 Colonial Blvd., LLC v. Griffin*, 2015 WL 894928, at *4 n.41 (Del. Ch. Feb. 26, 2015) (distinctions between Delaware law and FAA are "not material" to order compelling arbitration); *Julian v. Julian*, 2009 WL 2937121, at *3 n.18 (Del. Ch. Sept. 9, 2009) (analyzing "relevant decisions of the Delaware courts, whether they arose in the context of the DUAA or the FAA").

When considering all the relevant matters here, Delaware law is no different from the FAA. *First*, Delaware law recognizes a public policy favoring arbitration. *SBC Interactive Inc. v. Corp. Media Partners*, 714 A.2d 758, 761 (Del. 1998). "Any doubt as to arbitrability" therefore must "be resolved in favor of arbitration." *Id.* *Second*, PetSmart has met its burden to establish the formation of a valid contract to arbitrate under Delaware law. *See supra* at 9–11. *Third*, Delaware law recognizes that where "a contract clearly and unmistakably provides that an arbitrator will decide substantive arbitrability, then the contract controls." *GTSI Corp. v. Eyak Tech., LLC*, 10 A.3d 1116, 1119 (Del. Ch. 2010) (enforcing delegation clause and compelling arbitration). Here, the DRP clearly and unmistakably provides that an arbitrator will decide substantive arbitrability. *See supra* at 7–8. And *fourth*, Delaware law recognizes the validity of class-action waivers. *See Edelist v. MBNA Am. Bank*, 790 A.2d 1249, 1261 (Del. Super. 2001); *Pick v. Discover Fin. Servs., Inc.*, 2001 WL 1180278, at *5 (D. Del. Sept. 28, 2001). Thus, even if the Court were to apply Delaware law here, it should compel Plaintiff to arbitrate her claims on an individual basis.

## IV.   CONCLUSION

Plaintiff has agreed to arbitrate her claims as well as all threshold issues related to the validity and enforceability of the DRP. The Court should therefore grant this Motion, compel Plaintiff's claims to individual arbitration, and dismiss the action.

1   DATED: November 23, 2022

2                                                   GIBSON, DUNN & CRUTCHER LLP

3
                                                    By:  */s/ Theane Evangelis*
4                                                        _____

5                                                        Theane Evangelis
                                                         Megan Cooney
6                                                        Madeleine F. McKenna
                                                         Emily Sauer

7                                                   *Attorneys for Defendant PetSmart LLC*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
CASE NO. 4:22-CV-06210-YGR