Rachel W. Dempsey (SBN 310424)
rachel@towardsjustice.org
David H. Seligman (admitted *pro hac vice*)
david@towardsjustice.org
TOWARDS JUSTICE
2840 Fairfax Street, Suite 220
Denver, CO 80207
Tel: (720) 441-2236

Sparky Abraham (SBN 299193)
sparky@jubilee.legal
JUBILEE LEGAL
300 E Esplanade Dr, Ste 900
Oxnard, CA 93036-1275
Tel: (805) 946-0386

*Attorneys for Plaintiff and the Putative Classes*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

|  |  |
|---|---|
| BREANN SCALLY,<br><br>   Plaintiff, on behalf of herself<br>   and all others similarly situated,<br><br> vs.<br><br>PETSMART, LLC,<br><br>   Defendant. | Case No.: 22-cv-06210-YGR<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Hearing Date: February 28, 2023<br>Hearing Time: 2:00 P.M.<br>Hearing Place: Courtroom 1, 4th Floor<br>Judge: Hon. Yvonne Gonzalez Rogers |

# **TABLE OF CONTENTS**

I.   Background ............................................................................................... - 1

   A. Application ........................................................................................ - 1

   B. Arbitration agreement ..................................................................... - 2

   C. The TRAP ......................................................................................... - 3

   D. This lawsuit ...................................................................................... - 3

II.  Legal Argument ...................................................................................... - 3

   A. The FAA makes arbitration agreements as enforceable as other contracts, but not more so. .................................................................................................. - 3

   B. The DRP is unenforceable because it contains two separate unseverable and unenforceable provisions. ..................................................................... - 4

      1. The prohibition on public injunctive relief dooms enforcement of the DRP. - 5

         a. PetSmart cannot require waiver of the right to public injunctive relief...5

         b. Because PetSmart cannot require waiver of the right to public injunctive relief, the entire DRP is invalid....................................................................8

      2. The prohibition on mass arbitrations is unconscionable and flies in the face of legal ethics. ............................................................................................ - 9

         a. The DRP is procedurally unconscionable.............................................10

         b. The ban on mass arbitrations is substantively unconscionable.............12

         c.  Because the Mass Arbitration provision is unseverable, the entire DRP is invalid....................................................................................................13

   C. The DRP is carefully designed to make arbitration one-sided and virtually inaccessible to employees. .................................................................................... - 14

      1. Both the delegation provision and the DRP generally contain numerous unconscionable terms. ........................................................................ - 14

         a. Cost-splitting provision........................................................................15

         b. One-sided arbitration requirement........................................................17

         c. Restrictions on choice of arbitrator.......................................................18

      2. The DRP and delegation provision are permeated with unconscionability and cannot be enforced. ............................................................................. - 19

   D. To the extent that Delaware law is different from California law, the court must apply California law.................................................................................... - 20

   E. Even if Delaware law applied, the DRP is unconscionable and unenforceable. ....... - 23

III.  Conclusion ............................................................................................ - 25

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473 (Ct. App. 1982) ............................... 10

*Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83 (2000)....................... *passim*

*Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237 (2016) ............................................ 10, 11

*Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819 (9th Cir. 2019)............................................ 4, 5

*Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015) ............................................... 4

*Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996 (9th Cir. 2010).............. 23

*Broughton v. Cigna Healthplans of California*, 21 Cal. 4th 1066 (1999) ..................................... 7

*Burger v. Northrop Grunman Sys. Corp.*, 2021 WL 8322270 (C.D. Cal. Oct. 27, 2021)..............8

*Capriole v. Uber Techs., Inc.*, 7 F.4th 854 (9th Cir. 2021)............................................8

*Carbajal v. CWPSC, Inc.*, 245 Cal. App. 4th 227 (2016) ........................................ 11, 18

*Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916 (9th Cir. 2013)........................................ 17, 18

*Chemours Co. v. DowDuPont Inc.*, 2020 WL 1527783 (Del. Ch. Mar. 30, 2020)....................... 24

*Cir. City Stores, Inc. v. Adams*, 279 F.3d 889 (9th Cir. 2002)........................................ 8, 16, 20

*Clifford v. Quest Software Inc.*, 38 Cal. App. 5th 745 (2019).........................................8

*Cruz v. PacifiCare Health Sys., Inc.*, 30 Cal. 4th 303 (2003)........................................ 7

*Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681 (1996)........................................... 4

*Douglas v. U.S. Dist. Ct. for Cent. Dist. of California*, 495 F.3d 1062 (9th Cir. 2007) .............. 22

*Evans v. PayPal, Inc.*, No. 22-CV-00248-BLF, 2022 WL 1813993 (N.D. Cal. June 2, 2022).....21

*Fields v. Legacy Health Sys.*, 413 F.3d 943 (9th Cir. 2005)........................................ 21

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995) ........................................ 4

*Fritz v. Nationwide Mut. Ins. Co.*, No. CIV. A. 1369 (Del. Ch. Nov. 26, 1990)........................ 24

*Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332 (2015) ........................................................................................................................9, 10, 11

*Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010) ............................... 14

*Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66 (1998) ......................................................... 22

*Hampton v. PetSmart LLC*, No. 2:22-CV-01079-SB-PVC, 2022 WL 2288308 (C.D. Cal. Mar. 18, 2022).........................................................................................................................14

*Harper v. Ultimo*, 113 Cal. App. 4th 1402 (2003)........................................................ 11

*Hatfield v. Halifax PLC*, 564 F.3d 1177 (9th Cir. 2009) .............................................. 21

*Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535 (9th Cir. 2021)...........................6, 7, 8

*James v. Nat'l Fin., LLC*, 132 A.3d 799, 813 (Del. Ch. 2016).................................... 23

*Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052 (9th Cir. 2013) ......................................... 8

*Lim v. TForce Logistics, LLC*, 8 F.4th 992 (9th Cir. 2021)....................................*passim*

*MacClelland v. Cellco P'ship*, No. 21-CV-08592-EMC (N.D. Cal. July 1, 2022) ................. 7, 13

*McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017) ....................................... 5, 6, 7, 22

*Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022)...................................................... 4, 21

*Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1 (1983).......................21

*Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006)...................................... 15

*Nedlloyd Lines B.V. v. Superior Ct.*, 3 Cal. 4th 459 (1992)............................................ 22

*Oestreicher v. Alienware Corp.*, 502 F. Supp. 2d 1061 (N.D. Cal. 2007)........................ 21

*OTO, L.L.C. v. Kho*, 8 Cal. 5th 111 (2019)....................................................................... 13

*Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th 1425 (2012) ............................ 21

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223 (2012)......... 10

*Poublon v. C.H. Robinson Co.*, 846 F.3d 1251 (9th Cir. 2017)................................... 10, 11

*Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63 (2010) ................................................ 4, 14

*Reyes v. Hearst Commc'ns, Inc.*, No. 21-16542 (9th Cir. June 22, 2022) ....................... 16, 17, 20

*Rivera v. PetSmart, Inc.*, No. CV 18-2121, 2018 WL 5045380 (E.D. Pa. Oct. 17, 2018)............14

*Rummel Klepper & Kahl, LLP v. Delaware River & Bay Auth.*, No. CV 2020-0458-PAF (Del.

   Ch. Jan. 3, 2022)...................................................................................... 23, 24

*Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899 (2015) ........................................... 12, 16

*Saravia v. Dynamex, Inc.*, 310 F.R.D. 412 (N.D. Cal. 2015) ..................................... 12, 19, 22, 23

*Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109 (2013) ....................................... 9

*Swain v. LaserAway Med. Grp., Inc.*, 57 Cal. App. 5th 59 (2020) ........................................ 16, 18

*Tulowitzki v. Atl. Richfield Co.*, 396 A.2d 956 (Del. 1978)........................................ 23, 24

*Vaughn v. Tesla, Inc.*, No. A164053, 2023 WL 29132 (Cal. Ct. App. Jan. 4, 2023)....................7

*Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445illia (D.C. Cir. 1965)........................... 9

*Willie v. Southwestern Bell Telephone Co.*, 549 P.2d 903 (Kan. 1976) ...................................... 24

**Statutes**

9 U.S.C. § 201 ....................................................................................... 20

Cal. Civ. Code § 1670.5(a) ............................................................ 9, 19

**Rules**

ABA Model Rule 5.6 ................................................................. 12

This case challenges PetSmart's policy of forcing its low-paid workers into thousands of dollars' worth of debt for their own on-the-job training if they leave their jobs, as set forth in the company's Training Repayment Agreement Provision contract ("TRAP"). Now, with its Motion to Compel Arbitration, PetSmart seeks to force Plaintiff BreAnn Scally to pay many thousands of dollars more simply to have her claims that the TRAP is illegal heard. The arbitration agreement that PetSmart seeks to enforce is carefully crafted to sidestep the typical rules in employment and consumer arbitration requiring employers and lenders to pay the tens of thousands of dollars that arbitration costs. If the arbitration agreement is enforced, Plaintiff will quickly owe more in arbitration fees than she allegedly owes on the $5,500 debt she seeks to challenge.

The Court should deny PetSmart's motion to compel. The FAA places arbitration contracts on the same level as other contracts. It does not provide a blanket blessing for employers and corporations to use arbitration as a cudgel to avoid all liability for violating the law. PetSmart's arbitration agreement makes two separate unlawful clauses unseverable, meaning that the entire arbitration agreement sinks with them. The remaining unfair provisions—including a harsh cost-splitting term, a term allowing PetSmart to file litigation in court against workers, and a term limiting the choice of arbitration providers—so permeate the agreement with unconscionability that they render the entire arbitration requirement unenforceable.

I.      **Background**

A.      **Application**

Plaintiff BreAnn Scally applied to work at PetSmart in an entry-level pet bather position in December 2020. ECF No. 1-2 at 7 ("Complaint") ¶ 46. She was 23 years old and had an associate's degree, but had recently left college before completing her bachelor's degree. Scally Decl. ¶ 3. Scally had considerable student debt as well as credit card debt, and minimal savings. *Id*. ¶ 4. The job she was applying for paid approximately $15 per hour, which was around local minimum wage at the time of her employment. *Id*. ¶ 5; *see also* Complaint ¶ 55.

**B.      Arbitration agreement**

Scally does not recall having agreed to arbitration, Scally Decl. ¶ 2, but according to a declaration from Jennifer Offner, an HR director at PetSmart, all PetSmart job applicants are presented with several web pages titled "Pre-Application Disclosures" as part of their online job applications. ECF No. 14-1 ("Offner Decl.") ¶ 5. The fourth Pre-Application Disclosures page summarizes certain parts of PetSmart's Dispute Resolution Policy ("DRP"), or arbitration agreement, including that applicants can opt out of the DRP if they follow the procedure set forth in the hyperlinked contract. ECF No. 14-6 at 3. It also states that "the DRP is not a non-negotiable material term that I am required to accept in order to apply for, obtain or retain employment." *Id*. The summary states that applicants are free to negotiate the DRP's terms, although it does not describe how. *Id*. In order to move past the Pre-Application Disclosures, applicants must either select "I agree" or "I do not agree and wish to end my application." *Id*.

The DRP itself is a 13-page document purporting to bind applicants who do not opt out to individual arbitration. ECF No. 14-2. Its first paragraph states that it is "aimed at resolving covered employment-related disputes quickly and fairly and in a mutually beneficial way." *Id*. ¶ 1. Further down, however, the DRP contains several unusual and notable provisions that substantially limit the rights of the employee. Most significantly, the agreement requires the employee and PetSmart to split the costs of the arbitration equally, except "[t]o the extent required by binding United States Supreme Court precedent." *Id*. ¶ 16. The agreement also prohibits the use of the two most reputable arbitration firms in the country, the American Arbitration Association ("AAA") and JAMS. *Id*. ¶ 10. Instead, the DRP states that the parties "must mutually agree on the selection and appointment of a separate neutral arbitrator who is experienced in the laws at issue." *Id*. ¶ 9.

In addition, the DRP requires employees to waive the right to bring representative actions, which are defined as class, collective, private attorney general, or "joined, consolidated, or coordinated" actions, as well as any other claims or disputes brought in a representative capacity. *Id*. ¶¶ 11-12 (the "Waiver" provision). The Waiver provision includes a ban on "injunctive relief other than in favor of the Covered Individual or Company seeking such relief."

*Id*. ¶ 11. The DRP also purports to prohibit "Mass Arbitrations," which it defines as 100 or more arbitration demands asserting the same or similar claims within a 52-week period brought by the same lawyers, law firms, or otherwise affiliated or associated lawyers or law firms. *Id*. ¶ 13. Both the Waiver provision and the Mass Arbitrations provision are unseverable from the remainder of the DRP. *Id*. ¶ 26. The DRP contains a general delegation provision assigning questions about arbitrability to an arbitrator, *id*. ¶ 3, but disputes over the Waiver provision and Mass Arbitrations provision are reserved for the Court, *id*. ¶ 4.

### C. The TRAP

Scally was hired and began working for PetSmart as a bather in February 2021. Complaint ¶ 46. In April 2021, she began to train as a groomer in a program PetSmart refers to as "Grooming Academy." *Id*. ¶ 48. Prior to this training, PetSmart required her to sign a Training Agreement Repayment Provision ("TRAP") that purported to bind her to pay PetSmart $5,500 if her employment with PetSmart was terminated within two years of the start of her training. *Id*. The TRAP specified that it could be enforced against the employee in a civil lawsuit. *Id*. ¶ 31. It did not include an arbitration provision. *See* Exhibit A to Scally Decl.

In September 2021, after many months of struggling to make ends meet on her salary, Scally quit her job at PetSmart. Complaint ¶ 55. In January 2022, a collection appeared on her credit report in the amount of the TRAP debt. *Id*. ¶ 57.

### D. This lawsuit

On July 28, 2022, Scally filed this lawsuit as a putative class action in San Mateo Superior Court. PetSmart removed it to federal court on October 19, 2022. ECF No. 1-2. On November 23, 2022, PetSmart filed this motion to compel Scally's claims to arbitration. ECF No. 14.

## II. Legal Argument

### A. The FAA makes arbitration agreements as enforceable as other contracts, but not more so.

Plaintiff does not dispute that the Federal Arbitration Act ("FAA") governs this motion. However, in arguing that *only* the FAA applies to the analysis of the DRP, PetSmart greatly

overstates the FAA's reach. The FAA stands for the basic premise that arbitration agreements must be placed "on an equal footing with other contracts." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010); *see also Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022) ("[A]rbitration agreements [are] as enforceable as other contracts, but not more so."). Accordingly, courts must "enforce them according to their terms." *Id*. Courts cannot create "arbitration-specific" doctrines. *Morgan*, 142 S. Ct. at 1714.

Courts do not have an either/or choice between the FAA and state law. Rather, even where the FAA applies, courts analyzing the validity of arbitration agreements "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). The FAA preempts state laws that are targeted specifically at arbitration or that undermine the fundamental attributes of arbitration, but not state laws that apply to contracts generally. *Blair v. Rent-A-Ctr., Inc.*, 928 F.3d 819, 827 (9th Cir. 2019). Therefore, an arbitration agreement governed by the FAA "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Rent-A-Ctr., W. v. Jackson*, 561 U.S. at 67 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

### B. The DRP is unenforceable because it contains two separate unseverable and unenforceable provisions.

By default, "[i]n deciding whether to compel arbitration under the FAA, a court's inquiry is limited to two 'gateway' issues: '(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021). These gateway issues can be delegated to an arbitrator "where 'the parties *clearly and unmistakably* provide [for it].'" *Id*. (quoting *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)).

Although the DRP contains a delegation provision, the delegation provision contains several carve-outs. These carve-outs include disputes "regarding the applicability, interpretation, enforceability, and/or severability of the Mass Arbitrations . . . provisions and the Waiver provisions of this DRP." ECF No. 14-2 at ¶ 4. Therefore, the enforceability of these provisions is, by the plain terms of the contract, for this Court to decide.

As set forth above, the Mass Arbitrations provision unilaterally prohibits PetSmart employees from retaining certain legal counsel, while imposing no such restriction on PetSmart itself. *Id*. ¶ 13. The Waiver provision requires PetSmart employees to waive the right to bring all "representative actions," which are defined to include any actions that "award injunctive relief other than in favor of the Covered Individual or Company seeking such relief." *Id*. ¶ 11. Both of these provisions are unenforceable as a matter of California law.  Moreover, neither the Waiver provision nor the Mass Arbitrations provision is severable from the remainder of the DRP if a court finds them invalid, *id*. ¶ 26, meaning that if the Court concludes that either term is unenforceable, then the entire DRP is enforceable too.

       1.       **The prohibition on public injunctive relief dooms enforcement of the DRP.**

       a)       **PetSmart cannot require waiver of the right to public injunctive relief.**

Public injunctive relief is injunctive relief that "has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 951 (2017). It is contrasted with private injunctive relief, which "resolves a private dispute between the parties and rectifies individual wrongs." *Id*. Under California law,[1] a provision in a predispute arbitration agreement that waives the right to seek a public injunction in any forum "is contrary to California public policy and is thus unenforceable under California law." *Id.* at 952. The California Supreme Court has held that this conclusion is not preempted by the FAA. *Id*. The Ninth Circuit has agreed. *Blair v. Rent-A-Ctr.*, 928 F.3d at 828. Thus, the part of the DRP's Waiver provision that purports to require plaintiff to waive her right to seek a public injunction is invalid and unenforceable.

---

[1]    Although the DRP contains a choice-of-law provision requiring the application of Delaware law "[t]o the extent that state law is applicable under the FAA," ECF No. 14-2 ¶ 20, PetSmart appears to concede in its opening brief that this issue is governed by California law. *See* ECF No. 14 ("Opening Br.") at 12 (arguing that Plaintiff does not properly request public injunctive relief and citing exclusively to California-law cases). Regardless, as discussed in greater detail in Part II.D, *infra*, choice-of-law rules require the application of California law.

PetSmart seeks to avoid this outcome by arguing that Plaintiff seeks only "[r]elief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff," which it argues does not constitute public injunctive relief. Opening Br. at 19 (quoting *McGill*, 2 Cal. 5th at 955; *Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 542 (9th Cir. 2021)). It argues that because the wrongful acts alleged in the complaint primarily impacted PetSmart groomers, the relief she seeks is "private injunctive relief." ECF No. 14 at 19. This position misconstrues both the facts and the law.

The injunctive relief Plaintiff seeks has a clear public purpose. As PetSmart's own representative notes, "PetSmart operates one of the largest chains of pet-centric retail stores in North America," including more than 100 stores in California alone. Offner Decl. ¶ 3. PetSmart provides grooming services to "millions of pets," *id.*, which are groomed by groomers trained in PetSmart's "Grooming Academy." *Id.* ¶ 4. The Complaint sets forth in detail how PetSmart falsely advertises Grooming Academy to the public as "free," but then requires groomers to sign a Training Repayment Agreement Provision ("TRAP") that subjects them to thousands of dollars' worth of debt that is only forgiven if they work for PetSmart for at least two years. This practice is illegal: if the debt is primarily for PetSmart's benefit, then it violates California employment law to charge employees for it, and if is primarily for the employees' benefit, then PetSmart is skirting laws concerning consumer debt and the regulation of educational institutions. Complaint ¶¶ 1-7. Among other relief, Plaintiff has sought a public injunction to prevent PetSmart from further engaging in false advertising and from offering consumer loans for an unlicensed post-secondary institution without the required disclosures, in violation of California's Unfair Competition Law and Consumer Legal Remedies Acts. *Id.* ¶¶ 92, 109, 119, 130, 135, and 146.

The Ninth Circuit has recognized the type of claims Plaintiff brings here as "the paradigmatic example" of the kind of public injunctive relief *McGill* makes unwaivable. *Hodges*

- 6 -

*v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 542 (9th Cir. 2021);[2] *see also MacClelland v. Cellco P'ship*, No. 21-CV-08592-EMC, 2022 WL 2390997, at *9 (N.D. Cal. July 1, 2022). As the *Hodges* court noted, *McGill*, like this case, involved claims under California's UCL and CLRA, both of which authorize injunctive relief "that is primarily 'for the benefit of the general public.'" *Id*. at 541 (quoting *McGill*, 2 Cal. 5th at 955). The *McGill* Court noted that by definition, "[a]n injunction under the CLRA against a defendant's deceptive methods, acts, and practices 'generally benefit[s]' the public 'directly by the elimination of deceptive practices' and 'will . . . not benefit' the plaintiff 'directly,' because the plaintiff has 'already been injured, allegedly, by such practices and [is] aware of them.'" 2 Cal. 5th at 955 (quoting *Broughton v. Cigna Healthplans of California*, 21 Cal. 4th 1066 (1999)). "Likewise, . . . an injunction under the UCL or the false advertising law against deceptive advertising practices 'is clearly for the benefit of ... the general public'; 'it is designed to prevent further harm to the public at large rather than to redress or prevent injury to a plaintiff.'" *McGill*, 2 Cal. 5th at 955 (quoting *Cruz v. PacifiCare Health Sys., Inc.*, 30 Cal. 4th 303, 314 (2003)).

Here, Plaintiff seeks to require PetSmart to stop falsely advertising its training as free to prospective employees, stop falsely representing the Grooming Academy as a legitimate educational institution able to issue enforceable debt, and to comply with the law governing consumer lending disclosures. This requested relief "does not require effectively fashioning individualized relief for non-parties." *Hodges*, 21 F.4th at 542. Moreover, by definition, it would primarily benefit an unascertainable group of people who are not members of the putative Class, *see id.*, as anyone who is a Class Member is already subject to the TRAP and has already fallen victim to the misleading statements, representations and omissions that Plaintiff seeks to enjoin. This distinguishes Plaintiff's request for public injunctive relief from the requests for injunctive

---

[2]    A California Court of Appeal has recently called some of the analysis in *Hodges* into question, noting that its relatively narrow construction of an appropriate request for public injunctive relief is inconsistent with California law as established by *McGill*. *Vaughn v. Tesla, Inc.*, No. A164053, 2023 WL 29132, at *11 n. 16 (Cal. Ct. App. Jan. 4, 2023). However, it is not necessary to reach this issue here because Plaintiff's request for public injunctive relief falls squarely within the bounds established by *Hodges*.

relief PetSmart cites, all of which would primarily benefit current and former employees by entitling them to some form of monetary benefit.[3] That Plaintiff *also* seeks other remedies that may be of specific benefit to the Class, including damages, declaratory relief, and an injunction to prevent PetSmart from collecting on outstanding debt, does not alter this analysis.

A comparison of this case with the Ninth Circuit's decision in *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052 (9th Cir. 2013) is illustrative. The plaintiffs in that case also sought injunctive relief with respect to UCL claims for providing loans without certain required disclosures. *Id.* at 1060. But the relief they sought—to enjoin the defendants from reporting employee defaults to credit-reporting agencies—was specific to "past harms suffered by the members of the limited putative class." *Id.* Similarly, in *Hodges*, the complaint requested relief specific to current cable subscribers that would "entail the consideration of the individualized claims of numerous [customers]." 21 F.4th at 549. The *Hodges* court contrasted the individualized relief requested in that case with "a simple prohibition on running a false advertisement or a mandatory injunction to obtain certain licenses or to make additional public disclosures in advertising,"—i.e., precisely the type of public injunctive relief Plaintiff requests here. *Id.*

> **b)**     **Because PetSmart cannot require waiver of the right to public injunctive relief, the entire DRP is invalid.**

Generally, courts confronted with an unenforceable contract term have the discretion to choose whether to sever that term and enforce the contract in its absence or invalidate the entire contract. *Cir. City Stores, Inc. v. Adams*, 279 F.3d 889, 895 (9th Cir. 2002). However, PetSmart opted to include a "poison pill" in the DRP making the Waiver provision—which includes the prohibition on public injunctive relief—unseverable. ECF No. 14-2 ¶ 26 ("Absent Company's

---

[3]     *See Capriole v. Uber Techs., Inc.*, 7 F.4th 854, 870 (9th Cir. 2021) (claim for sick leave for current employees was "overwhelmingly directed at Plaintiffs and other rideshare drivers"); *Burger v. Northrop Grunman Sys. Corp.*, 2021 WL 8322270, at *9 (C.D. Cal. Oct. 27, 2021) (claim for expense reimbursements "seeks to redress only . . . injury to Northrop employees"); *Clifford v. Quest Software Inc.*, 38 Cal. App. 5th 745, 753-54 (2019) (individual claims for failure to pay overtime and other wage-and hour violations were not directed towards the "public at large").

express written consent given while enforcing this DRP, the Waiver provisions and the Mass Arbitrations provisions are not severable."). Thus, the Court must invalidate the entire contract.

> **2.** **The prohibition on mass arbitrations is unconscionable and flies in the face of legal ethics.**

As noted above, the DRP also carves challenges to its Mass Arbitrations provision out of its broader delegation provision, meaning that such challenges must be heard by this Court. ECF No. 14-2 ¶ 4. The Mass Arbitrations provision purports to prohibit more than 100 individuals "represented by the same lawyer(s) or law firm(s) and/or by one or more of several affiliated or associated lawyers or law firms" from filing arbitration demands during any "rolling 52-week period." ECF No. 14-2 ¶ 13. It further purports to permit PetSmart to refuse to participate in any proceeding it deems a mass arbitration. *Id.* The effect of this provision is to restrict employees' right to select their own legal counsel, and to prospectively restrict the legal practice of any lawyer who represents a large number of PetSmart employees. The DRP does not include any parallel provision limiting PetSmart's ability to bring arbitrations against its employees, seeking to restrict its choice of legal representative, or attempting to set limitations upon its counsel's practice of law.

This provision is unconscionable and therefore unenforceable. Unconscionability is an equitable principle developed to address contracts that combine an "absence of meaningful choice on the part of one of the parties . . . with contract terms which are unreasonably favorable to the other party." *Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.*, 232 Cal. App. 4th 1332, 1346 (2015) (citing *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965). "As that formulation implicitly recognizes, the doctrine of unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results.'" *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1133 (2013). Whether a contract is unconscionable is assessed at the time the contract was made. *Id.* at 1164 (quoting Cal. Civ. Code § 1670.5(a)). Under California law, unconscionability is assessed on a sliding scale, such that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to

come to the conclusion that the term is unenforceable, and vice versa." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017). It is "a flexible doctrine designed to allow courts to directly consider numerous factors which may adulterate the contractual process." *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 484 (Ct. App. 1982).

### a)    The DRP is procedurally unconscionable.

Procedural unconscionability focuses on "oppression or surprise due to unequal bargaining power." *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012). "Oppression" refers to circumstances where there is "no real negotiation and an absence of meaningful choice." *Poublon*, 846 F.3d at 1260 (quoting *Grand Prospect Partners*, 232 Cal. App. 4th at 1347-48). It can be established "by showing the contract was one of adhesion or by showing from the 'totality of the circumstances surrounding the negotiation and formation of the contract' that it was oppressive." *Id.*; *see also Lim*, 8 F.4th at 1000. "'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." *A & M Produce Co.*, 135 Cal. App. 3d at 486. "At one end of the spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural unconscionability." *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1244 (2016). "Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum." *Id.*

In a transparent effort to avoid the conclusion that the DRP is procedurally unconscionable, PetSmart included an arbitration opt-out and a statement that the signer "agree[s] that the DRP is not a non-negotiable material term that I am required to accept in order to apply for, obtain or retain employment with Company, and that to the extent I desire to do so, I am free to seek to negotiate its terms." ECF No. 14-2 at 14. Pursuant to the terms of the contract, "any Covered Individual who wishes to negotiate the terms of this DRP can contact Company's general counsel to do so." *Id.* ¶ 24.

Setting aside the question of whether an offer for a minimum-wage employee to negotiate individualized employment terms directly with the general counsel of a multibillion-dollar company can possibly be made in good faith, neither of these clauses saves the contract.

PetSmart appears to be relying on the idea that procedural unconscionability cannot attach in the absence of a contract of adhesion, i.e., a contract presented to a weaker party by a more powerful drafting party on a take-it-or-leave-it basis. But that is not the law. "'Although procedural unconscionability *generally* takes the form of a contract of adhesion,' adhesiveness is not a prerequisite for such a finding." *Harper v. Ultimo*, 113 Cal. App. 4th 1402, 1410 (2003). The Ninth Circuit has confirmed that under California law, procedural unconscionability can be shown by *either* adhesiveness *or* the "totality of the circumstances surrounding the negotiation and formation of the contract." *Poublon*, 846 F.3d at 1260 (quoting *Grand Prospect Partners, L.P.*, 232 Cal. App. 4th at 1348).

Here, regardless of whether the contract was adhesive, the totality of the circumstances leaves little doubt that the DRP was at least somewhat procedurally unconscionable, as it was by no means "freely negotiated by roughly equal parties." *Baltazar*, 62 Cal. 4th at 1244. Courts assessing procedural unconscionability consider circumstances such as "(1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney." *Grand Prospect Partners, L.P.*, 232 Cal. App. 4th at 1346. Nearly all of these circumstances support a finding of unconscionability: the DRP was a 13-page form contract provided by PetSmart as part of an online job application for a minimum-wage job. *See* Offner Decl. ¶ 5; Complaint ¶ 55; ECF No. 14-2. Scally was by no means a "highly sought-after employee"; rather, at the time she applied to be a PetSmart bather, she was a 23-year old with an associate's degree seeking an entry-level position. *See Carbajal v. CWPSC, Inc.*, 245 Cal. App. 4th 227, 244 (2016) (noting the "acute" economic pressure on all but "the most sought-after employees" to accept the terms of employment); Scally Decl. ¶ 3. In addition to the oppression, there was also surprise: the DRP was presented as one of several forms that PetSmart job applicants had to click through in order to complete their job application, and many of the more significant terms were hidden behind a link. Offner Decl. ¶ 9; ECF No. 14-6. In view of these circumstances, it is clear that the DRP was

procedurally unconscionable. *See Saravia v. Dynamex, Inc.*, 310 F.R.D. 412, 420 (N.D. Cal. 2015) (holding that even if it were the case that employees could seek to negotiate their employment agreements, "the circumstances of the execution of those agreements were so oppressive that any such opportunity was meaningless").

          **b)**        **The ban on mass arbitrations is substantively unconscionable.**

In addition to the procedural unconscionability surrounding the circumstances of contract formation, the Mass Arbitrations provision is substantively unconscionable (and, as discussed in Part II.C.1, *infra*, so are several other provisions in the DRP). Substantive unconscionability is concerned with "terms that are 'unreasonably favorable to the more powerful party,'" including terms that are "overly harsh" or "unduly oppressive." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015).

The Mass Arbitrations provision clearly meets this standard. As noted above, its practical effect is to restrict PetSmart employees from selecting their own attorneys in arbitration. This runs counter to the procedural rules of every single arbitration provider that PetSmart identifies in the DRP, all of which provide the parties to an arbitration some variation on the right to "representation by a person *of their choice*."[4] These rules may reflect the well-established principle that it is unethical for lawyers to offer or enter into a contract that restricts another lawyer's right to practice law. *See* ABA Model Rule 5.6. The comments to the ABA rule on this issue clarify that this practice is unethical because it "limits the freedom of clients to choose a lawyer"—precisely what the Mass Arbitrations provision does. *See* comment on Rule 5.6. Whether the attorneys that drafted the provision violated an ethical duty is beyond the scope of

------

[4]    CPR, Inc., https://static.cpradr.org/docs/Due-Process-Protections.pdf, at p. 1 (emphasis added); *see also* Judicate West, https://www.judicatewest.com/DisplayPDFByName/127/ARBRules, at p. 4 ("The parties should be represented by licensed attorneys of their choice."); ADR Services, Inc., https://www.adrservices.com/wp-content/uploads/2021/01/ADR-ARBITRATION-RULES-FINAL-1-29-21.pdf, at p. 9 (parties may proceed pro se or "may be represented by counsel of that party's choosing"); iVAMS, http://ivams.com/wp-content/uploads/Rules-Nov.pdf, at p. 2 ("Any party may be represented by a member of the State Bar, or by any other person of his/her choosing.").

this opposition, but including it in an employment contract presented to an unsophisticated employee "shock[s] the conscience" and makes it unconscionable. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 92 (2000).

The Mass Arbitrations provision is particularly unconscionable because it is one-sided: PetSmart is free to use the same attorneys in any proceedings it chooses, meaning that it but not employees are able to benefit from repeat-player bias. In *MacClelland v. Cellco Partnership*, 2022 WL 2390997, a court in the Northern District of California found unconscionability in a similar—but substantially less restrictive—provision that required more than 25 arbitrations filed by the same counsel to proceed in tranches, with the first five proceedings serving as a bellwether for the rest. *Id*. at *11. The court held that the lack of mutuality was a "paramount" consideration in its finding of substantive unconscionability, noting that the arbitration contract at issue "imposes restrictions on a law firm representing twenty-five or more of Verizon's customers with 'similar claims,' [but] Verizon is apparently free to select the same law firm to represent it in all of its arbitrations." *Id*. at *13.

Here, the same fundamental unfairness is present, but to a greater degree: a PetSmart employee who retains a law firm with "too much" experience representing other PetSmart employees in arbitration will find their proceeding not merely delayed, but rather banned altogether from the arbitral forum. Given this substantial substantive unconscionability and the presence of any procedural unconscionability, the Mass Arbitrations provision is unenforceable. *See OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 130 (2019) (substantial procedural unconscionability combined with even a "low degree" of substantive unconscionability sufficient to invalidate a contract).

### c)      Because the Mass Arbitration provision is unseverable, the entire DRP is invalid.

Much like with the Waiver provision, the DRP provides that the Mass Arbitration provision is unseverable. ECF No. 14-2, ¶ 26. Because, for the reasons set forth above, it is unconscionable and unenforceable, the Court must therefore invalidate the entire DRP. *See* Part II.B.1.b, *supra*.

C.    **The DRP is carefully designed to make arbitration one-sided and virtually inaccessible to employees.**

Even if the DRP did not contain the poison pills discussed above, it would be unenforceable because it is permeated with unconscionability. The question of whether the DRP as a whole is unconscionable is nominally delegated to the arbitrator, but the delegation clause itself is unconscionable and unenforceable as well. Because "[a]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce," this Court has jurisdiction to assess the validity of the delegation provision in the face of an unconscionability challenge specific to that provision. *Lim*, 8 F.4th at 1000 (quoting *Rent-A-Ctr., W. v. Jackson*, 561 U.S. at 75). To require otherwise would violate longstanding U.S. Supreme Court precedent that before compelling arbitration of a dispute, a court must be "satisfied" that "the parties" to the dispute "agreed to arbitrate *that dispute*." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010).[5] As set forth below, both the delegation provision and the DRP more broadly are unconscionable and unenforceable.

1.    **Both the delegation provision and the DRP generally contain numerous unconscionable terms.**

As discussed in Part II.B.2, *supra*, a finding of unconscionability under California law requires both substantive and procedural unconscionability, with the overall unconscionability of a contract assessed on a sliding scale. "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term

_____

[5]    PetSmart cites to *Hampton v. PetSmart LLC*, No. 2:22-CV-01079-SB-PVC, 2022 WL 2288308, at *3 (C.D. Cal. Mar. 18, 2022) in support of its argument that the delegation clause is enforceable. Opening Br. at 15. As PetSmart itself concedes, however, the outcome in that case was dictated by the plaintiff's failure to "'challenge the delegation provision' specifically." *Id.* Thus, it is inapplicable here. *Rivera v. PetSmart, Inc.*, No. CV 18-2121, 2018 WL 5045380 (E.D. Pa. Oct. 17, 2018) is even less relevant because (1) the opinion cited involves Defendant Medical Management, not PetSmart, as the claims against PetSmart had been dismissed with prejudice, so it is unclear that the court was reviewing a PetSmart arbitration agreement at all, (2) the plaintiff in that case did not make any of the arguments at issue here, and (3) Pennsylvania law, and not California law, applied to the analysis. Indeed, the Court in *Rivera* noted that the arbitration agreement did not contain a delegation clause, so it appears to have been a different agreement altogether. *Id.* at *2 n.2.

is unenforceable, and vice versa." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006). Plaintiff has already established in Part II.B.2.a, *supra*, that the DRP is at least somewhat procedurally unconscionable. And all of the procedural concerns discussed with respect to the DRP apply equally to the delegation provision within the DRP, as it was not negotiated separately from the remainder of the contract.

Plaintiff has also already identified one substantively unconscionable provision, the Mass Arbitrations provision. That unconscionability analysis applies equally to the delegation provision as to the DRP more broadly: Any PetSmart employee seeking to arbitrate arbitrability would be limited in their ability to select their own counsel in that proceeding just as they would in an arbitration on the merits. And the Mass Arbitrations provision is only one of several unconscionable provisions in the DRP. Taken together, these provisions not only make it more difficult for an employee with a small-value claim to sue PetSmart, they make it effectively impossible for employees to pursue any legal claim against PetSmart in any forum.

### a)     Cost-splitting provision

Unlike court, which is a social service funded by taxpayers and largely free aside from filing fees, arbitrators are privately contracted and generally paid for their services at rates that range from hundreds to thousands of dollars per hour.[6] In recognition of the fact that this constitutes an impossible expense for the vast majority of individual consumers and employees, the major arbitration houses the American Arbitration Association ("AAA") and JAMS, Inc. cap the fees that employees and consumers can be required to pay at a few hundred dollars per proceeding.[7]

---

[6]     *See, e.g.*, Judicate West, https://www.judicatewest.com/Firm/PricingAndPolicies (arbitrators' fees range from $490-1800/hour); iVAMS, http://ivams.com/wp-content/uploads/Fee-Schedule1-2015.pdf (base rate for hearings is $200 per hour per side).

[7]     *See* American Arbitration Association, "Employment Arbitration under AAA Administration," https://www.adr.org/employment (capping employee share of fees at $300); JAMS, "Policy on Employment Arbitration Minimum Standards of Procedural Fairness," https://www.jamsadr.com/employment-minimum-standards/ (limiting the fees that the employee can be required to bear to the initial filing fee).

1

2   The DRP, however—and by extension, the delegation provision—requires that PetSmart

3   and the employee split the cost of arbitration equally "[u]nless binding United States Supreme

4   Court precedent requires one party or the other to bear all or a greater share of the arbitration

5   forum costs." ECF No. 14-2 at ¶ 16. Indeed, the agreement goes so far as to prohibit the use of

6   either AAA or JAMS rules to administer an arbitration, presumably because those procedures

7   forbid cost-splitting as a part of their basic due process protections. *Id*. at ¶ 10. Although the

8   agreement allows the arbitrator to overrule this provision "based on admissible, competent

9   evidence of the party's inability to pay the equal apportionment of costs," *id*. at ¶ 16, this caveat

10  is unhelpful as it places the employee in the Kafkaesque position of having to pay the arbitrator

11  to adjudicate the question of whether or not they can pay the arbitrator. *See Lim,* 8 F.4th at 1003

12  (finding that a similar clause did not save an unconscionable cost-splitting provision because

13  "[t]here is no assurance that such relief would be granted.").

14          It is well-established under California law that cost-splitting terms such as this one that

15  "unreasonably limit access to arbitration" are substantively unconscionable. *Sanchez*, 61 Cal. 4th

16  at 920; *see also Swain v. LaserAway Med. Grp., Inc*., 57 Cal. App. 5th 59, 73 (2020) ("Courts

17  may use the unconscionability doctrine to protect 'consumers against fees that unreasonably limit

18  access to arbitration.'"); *Armendariz*, 24 Cal. 4th at 110 ("[T]he imposition of substantial forum

19  fees is contrary to public policy, and is therefore grounds for invalidating or 'revoking' an

20  arbitration agreement and denying a petition to compel arbitration."). The proper inquiry in such

21  cases is "what dispute resolution mechanism the parties reasonably expected the employee to be

22  able to afford." *Id*. at 1163. "[Federal d]istrict courts have found cost-sharing provisions in

23  employment arbitration agreements substantively unconscionable because the employer

24  generally has far greater resources and the employee should not be required to pay for the

25  opportunity to present claims—especially where employees would not bear those costs in federal

26  court." *Lim*, 8 F.4th at 1002; *see also Cir. City Stores*, 279 F.3d at 894; *Reyes v. Hearst

27  Commc'ns, Inc.*, No. 21-16542, 2022 WL 2235793, at *2 (9th Cir. June 22, 2022) (fee-splitting

28  provisions have "been impermissible under *Armendariz* for more than two decades").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

When the DRP was presented to her, Scally had recently left college, was in both student and credit card debt, and was seeking a job that paid just above minimum wage. Scally Decl. ¶¶ 3-4. After she began working at PetSmart, she found that her $15 an hour salary was not even enough to be able to both feed her pets and fill her car with gas. *Id*. ¶ 5. Among the arbitration firms that PetSmart lists in the DRP, the lowest hourly rate advertised for an arbitrator is $400 per hour. Scally would have to work more than 26 hours at $15 an hour with zero other expenses in order to purchase one hour of that arbitrator's time, making arbitration patently and obviously unaffordable to her. This is a type of expense that would not be required if Scally were free to proceed in federal court. With respect to the delegation clause specifically, the DRP would require Scally to be prepared to pay thousands of dollars that she cannot afford in order to get before an arbitrator just to argue that it is unconscionable to make her pay thousands more dollars to proceed on the merits of her claims.

In light of the above, "the cost-splitting provision, as applied to the delegation clause [as well as the contract as a whole], [is] unconscionable under California law." *Lim*, 8 F.4th at 1003; *see also Reyes*, 2022 WL 2235793, at *1 ("The district court correctly held that Hearst's arbitration agreement with Reyes violated [California law] because it contained a provision requiring Reyes to pay an equal share of all arbitration fees."); *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 925 (9th Cir. 2013) (arbitration agreement was substantively unconscionable where the cost of an arbitrator "likely dwarfs the amount" of the claims the arbitrator would adjudicate).

### b)      One-sided arbitration requirement

Read together with the TRAP, the DRP and delegation provision are also unconscionable because they appear to exclude debt-collection actions by PetSmart against its employees from the requirement to arbitrate, including the requirement to arbitrate arbitrability. The DRP encompasses "any and all employment-related claims, causes of action, or other disputes . . . between a Covered Individual and the Company based on any legal, equitable, or other ground or theory (including whether any such ground or theory constitutes an unwaivable statutory right) and would constitute cognizable claims or causes of action in a federal, state, or local court or

agency under applicable laws." ECF No. 14-2 at ¶ 3. The delegation clause specifies that the DRP's scope includes "issues of arbitrability." *Id*. The TRAP, however, requires employees to agree that "[i]f I fail to pay any amount when due, PetSmart may file a civil court action against me for monetary damages." Exhibit A to Scally Decl.

This one-sided exclusion from arbitration for one of the few types of actions PetSmart is likely to bring against its employees (rather than vice-versa) reflects a "high degree of substantive unconscionability." *Swain*, 57 Cal. App. 5th at 73. "Given the disadvantages that may exist for plaintiffs arbitrating disputes, it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee, without at least some reasonable justification for such one-sidedness based on 'business realities.'" *Carbajal*, 245 Cal. App. 4th at 248 (quoting *Armendariz*, 24 Cal.4th at 117-118). PetSmart has made no attempt to provide such a justification, and there is none. As California courts have observed, "[w]ithout reasonable justification for this lack of mutuality, arbitration appears less as a forum for neutral dispute resolution and more as a means of maximizing employer advantage." *Id*. That is precisely how PetSmart has attempted to use the arbitration agreement here, and the Court should not allow it.

### c) Restrictions on choice of arbitrator

Additionally, as noted above, the DRP prohibits the use of arbitrators from AAA or JAMS, which are two of the most well-established arbitration providers in the country. As the Ninth Circuit noted in *Chavarria*, 733 F.3d at 923, "the preclusion of institutional arbitration administrators, namely AAA or JAMS, which have established rules and procedures," may indicate unconscionability. Further highlighting the unconscionability of the DRP and its delegation provision, the contract offers that the parties can choose an arbitrator from four potential arbitration houses: CPR, Judicate West, ADR Services, and iVAMS. ECF No. 14-2 ¶ 9. But of these four options, it appears that CPR would refuse to adjudicate an arbitration under the DRP, as that firm's due process procedures provide that employees "shall not be required to pay arbitration costs in an amount greater than the court fee required to file an action in a court of

competent jurisdiction."[8] By limiting employees' choice of arbitration providers to smaller providers that lack due process protections, PetSmart ensures that any arbitration—of arbitrability as well as on the merits—remains resolutely one-sided in its favor.

### 2.   The DRP and delegation provision are permeated with unconscionability and cannot be enforced.

Under California law, a court that finds a contract to be unconscionable can do one of three things: it can refuse to enforce the entire contract, it can sever the unconscionable clause and enforce the remainder of the contract, or it can limit the application of the unconscionable provision. *Lim*, 8 F.4th at 1005 (quoting Cal. Civ. Code § 1670.5(a)). "If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced." *Id*. (quoting *Armendariz*, 24 Cal. 4th at 124). "[M]ultiple defects" in an arbitration provision "indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." *Id*. Accordingly, courts should not enforce an arbitration agreement if it is "permeated by unconscionability" or if it "contains unconscionable aspects that cannot be cured by severance, restriction, or duly authorized reformation." *Id*. Severance is not permissible if the court would be required to augment the contract with additional terms, or if the contract is drafted in bad faith, "because severing such a term and enforcing the arbitration provision would encourage drafters to overreach." *Id*. As the Ninth Circuit has recognized, "[s]evering the unenforceable provisions of an arbitration clause (or as here, a delegation clause) would allow an employer to draft one-sided agreements and then whittle down to the least-offensive agreement if faced with litigation, rather than drafting fair agreements in the first instance." *Id*. (quoting *Saravia*, 310 F.R.D. at 420).

Here, as set forth above, there are multiple severe defects with the arbitration agreement and the delegation provision: the cost-splitting provision, the one-sidedness, the attempt to restrict employees from selecting an attorney of their choice, and the exclusion of most major

---

[8]   *See* CPR Due Process Protections, https://static.cpradr.org/docs/Due-Process-Protections.pdf.

national arbitration houses from the list of potential arbitrators. Taken together, these provisions mean that the delegation provision and the DRP more generally are permeated with unconscionability. Merely excising the unconscionable provisions would not resolve the contract's unconscionability: In order to make the contract fair, this Court would have to add a provision requiring PetSmart to pay all arbitration costs beyond an initial filing fee. A court may not rewrite contract provisions in this manner.

Moreover, this arbitration provision is well outside the bounds of most employment arbitration clauses, as is evident from the fact that the AAA, JAMS, and CPR would all refuse to administer it under their due process protocols. This suggests that it was drafted in bad faith to test the limits of how unfavorable an arbitration agreement can possibly be and still be enforced. Indeed, as the Ninth Circuit noted in *Reyes*, fee-splitting provisions have "been impermissible under *Armendariz* for more than two decades." 2022 WL 2235793, at *2. The *Reyes* Court held that the inclusion of this provision alone justified the district court's conclusion that invalidation, rather than severance, was the proper remedy. *Id*. This conclusion mirrors the Ninth Circuit's statement two decades earlier that a "fee allocation scheme" requiring an employee to pay for half of an arbitrator's fees "alone would render an arbitration agreement unenforceable." *Circuit City Stores*, 279 F.3d at 885. Here, it is only one of many unconscionable provisions. The Court should not reward this type of gamesmanship, and should invalidate both the delegation provision and the DRP.

**D.** **To the extent that Delaware law is different from California law, the court must apply California law.**

Although the foregoing analysis applies California contract law, the DRP contains a choice-of-law provision that states: "To the extent that state law is applicable under the FAA and/or the Convention [on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201], and/or in the event a court of competent jurisdiction holds or decides that this DRP and/or its Waiver Provisions are not subject to and governed by the FAA, then the laws of the State of Delaware, where PetSmart LLC is incorporated, will be the applicable state law." ECF No. 14-2 at 10. This provision is somewhat unclear, as it appears to suggest that if the FAA

is applicable to an arbitration contract, then state law is irrelevant, which as discussed in Part II.A, *supra*, is not how the law works. Plaintiffs do not contest that the FAA applies here—but state contract law also applies. Insofar as the choice-of-law provision was intended to require the parties to the DRP to apply Delaware contract law to the review of this contract, however, it is unenforceable.

"Federal courts sitting in diversity look to the law of the forum state in making choice of law determinations." *Oestreicher v. Alienware Corp.*, 502 F. Supp. 2d 1061, 1065 (N.D. Cal. 2007) (citing *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005)).[9] California courts assessing the validity of a choice-of-law clause first determine "(1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law." *Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th 1425, 1446 (2012); *see also Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009). If the answer to either of these questions is yes, the court must then "determine whether the chosen state's law is contrary to a *fundamental* policy of California." *Id*. Finally, if the answer to that question is also yes, "the court must then determine whether California has a 'materially greater interest than the chosen state in the determination of the particular issue.'" *Id*. (quoting *Nedlloyd Lines B.V. v. Superior Ct.*, 3 Cal. 4th 459, 467 (1992)). If all of these factors are met, the choice-of-law provision is unenforceable.

---

[9]     PetSmart argues that courts "routinely" enforce arbitration agreements' choice-of-law provisions, and does not even attempt to engage in the general choice-of-law analysis required under California law. Opening Br. at 5. To the extent that PetSmart is arguing that choice-of-law provisions get special status when they appear in arbitration agreements, this cannot survive the Supreme Court's recent decision in *Morgan v. Sundance*, which clarifies that courts cannot create "arbitration-specific variants" to generally-applicable rules "based on the FAA's 'policy favoring arbitration.'" 142 S. Ct. at 1713 (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Thus, for example, *Evans v. PayPal, Inc.*, No. 22-CV-00248-BLF, 2022 WL 1813993, at *3 (N.D. Cal. June 2, 2022), which PetSmart relies on, suggests that California's choice-of-law rules are superseded by the "considerable latitude" that the FAA allows parties "to choose what law governs some or all of its provisions," *id*. at *5, and fails entirely to undertake a California choice-of-law analysis. This is error.

Plaintiff does not concede that the parties have a substantial relationship with Delaware, as incorporation is merely a legal status that does not require physical presence and more than 50% of publicly traded companies are incorporated in Delaware. There is no other reasonable basis for the DRP's choice of law provision. However, Plaintiff will focus her argument on the third factor, whether Delaware law in this context is contrary to a fundamental policy of California.  To answer this question, the key inquiry is not whether Delaware law and California law differ, but whether California law reflects a fundamental policy of the state. If so, then either the outcome would be the same under Delaware and California law—in which case the choice of law is not determinative of the outcome of PetSmart's motion—or California law governs.

With respect to the waiver of public injunctive relief, *McGill* holds clearly that such a waiver "is contrary to California public policy." 2 Cal. 5th at 952. The California Supreme Court explained that the Legislature enacted California's consumer protection statutes to protect the state's consumers against unfair, unlawful, fraudulent and deceptive business practices, and to "promot[e] fair competition." *Id*. at 954. To these ends, the Legislature authorized broad relief, including public injunctive relief. *Id*. The *McGill* Court explained that "waiver in a predispute arbitration agreement of the right to seek public injunctive relief under these statutes would seriously compromise the public purposes the statutes were intended to serve." *Id*. at 638. To the extent the application of Delaware law would allow the waiver provision to stand, it undermines California's fundamental interest in protecting consumers and promoting fair competition within the state. *Id.; see also Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66, 73 (1998) (California's statutes and constitutional provisions reflect "fundamental public policy").

Similarly, to the extent that application of Delaware unconscionability law would allow the DRP to stand, that result runs counter to fundamental California policy. *See Douglas v. U.S. Dist. Ct. for Cent. Dist. of California*, 495 F.3d 1062, 1068 (9th Cir. 2007) (holding that the district court had erred in applying New York law to interpreting an arbitration agreement because it "conflict[ed] with California's fundamental policy as to unconscionable contracts"). For example, California law is clear that "[t]he imposition of substantial forum fees . . . is contrary to public policy." *Armendariz*, 24 Cal. 4th at 83. Thus, in *Saravia v. Dynamex, Inc.*, the

court invalidated a Texas choice-of-law provision where applying Texas law would have permitted cost-splitting, as "California public policy holds that the imposition of substantial forum fees is grounds for invalidating an arbitration agreement." 310 F.R.D. at 419. The *Saravia* court also considered that California unconscionability law does not allow an arbitration agreement to stand "even after multiple defects have been severed," while Texas law would have permitted the enforcement of the remainder of the contract despite numerous unconscionable provisions. *Id*.

Additionally, California's interest in this dispute is far greater than Delaware's, as it involves a case brought by a California employee on behalf of herself and other California employees applying California law[10] to a company doing business in California. Accordingly, "California would suffer a significant impairment of its public policy if this arbitration clause were enforced against its citizens." *Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010). Therefore, California law, and not Delaware law, applies.

**E.      Even if Delaware law applied, the DRP is unconscionable and unenforceable.**

Even if Delaware law did apply, the result would be the same: The DRP is unconscionable and cannot stand. Delaware law provides that a contract is unconscionable if "no man in his senses and not under delusion would make on the one hand, and no honest or fair man would accept, on the other." *James v. Nat'l Fin., LLC*, 132 A.3d 799, 813 (Del. Ch. 2016) (quoting *Tulowitzki v. Atl. Richfield Co.*, 396 A.2d 956, 960 (Del. 1978)). Like in California, unconscionability under Delaware law "turns on the totality of the circumstances" and considers both substantive and procedural unconscionability. *Id*. at 814-15. Also like in California, the Delaware procedural unconscionability analysis "examine[s] the procedures that led to the contract with the goal of evaluating whether seemingly lopsided terms might have resulted from arms'-length bargaining, . . . focus[ing] on the relative bargaining strength of the parties and whether the weaker party could make a meaningful choice." *Rummel Klepper & Kahl, LLP v.*

---

[10]      The Delaware choice-of-law provision appears to apply only to the DRP, and not to the employment relationship as a whole.

1   *Delaware River & Bay Auth.*, No. CV 2020-0458-PAF, 2022 WL 29831, at *14 (Del. Ch. Jan. 3,

2   2022) (quoting *Chemours Co. v. DowDuPont Inc.*, 2020 WL 1527783, at *12 (Del. Ch. Mar. 30,

3   2020)). Substantive unconscionability "requires a finding of 'terms evidenc[ing] a gross

4   imbalance that 'shocks the conscience.'" *Id*. Relevant factors include: (1) "the use of a printed

5   form or boilerplate contracts drawn skillfully by the party in the strongest economic position,"

6   (2) "a denial of basic rights and remedies," (3) "the circumstances surrounding the execution of

7   the contract," (4) "the hiding of clauses which are disadvantageous to one party in a mass of fine

8   print trivia or in places which are inconspicuous to the party signing the contract," (5) "phrasing

9   clauses in language that is incomprehensible to a layman or that divert his attention from the

10  problems raised by them or the rights given up through them," (6) "an overall imbalance in the

11  obligations and rights imposed by the bargain," (7) "exploitation of the underprivileged,

12  unsophisticated, uneducated and the illiterate," and (8) "inequality of bargaining or economic

13  power." *Fritz v. Nationwide Mut. Ins. Co.*, No. CIV. A. 1369, 1990 WL 186448, at *4 (Del. Ch.

14  Nov. 26, 1990) (quoting *Willie v. Southwestern Bell Telephone Co*., 549 P.2d 903, 906-07 (Kan.

15  1976)). Additionally, Delaware courts may consider the "business-practices-of-the-community

16  test," which "asks whether the terms are so extreme as to appear unconscionable according to the

17  mores and business practices of the time and place." *Tulowitzki*, 396 A.2d at 960.

18         In light of these principles, it is clear that the DRP is unconscionable under Delaware as

19  well as California law. It was drafted by PetSmart and presented to Scally, a relatively

20  unsophisticated party, in the context of her job application. Offner Decl. ¶ 5. She does not

21  remember ever having seen it. Scally Decl. ¶ 2. Even if she did, it was presented to her as a

22  means to "resolv[e] covered employment-related disputes quickly and fairly and in a mutually

23  beneficial way," even though in actual fact its substantive terms are one-sided and unfair. ECF

24  No. 14-2 ¶ 1. It unlawfully limits her remedies, seeks to restrict her choice of lawyer, and

25  imposes impossibly high costs. *See* Parts II.B.2.b. and II.C.1, *supra*. In addition, the DRP fails

26  the business-practices-of-the-community test: As discussed in Part II.C.1.a and c, *supra*, the DRP

27  is so grossly one-sided in PetSmart's favor and outside the bounds of what is generally

28  considered acceptable in an employer-employee arbitration that all major arbitration houses—

- 24 -

including CPR, which PetSmart itself identities as a potential administrator—would refuse to enforce it. Rarely are the business practices of the community so clear and so clearly violated.

III.    **Conclusion**

For the foregoing reasons, PetSmart's Motion to Compel Arbitration should be denied, and Plaintiff's claims should proceed in this Court.

DATED: January 18, 2023                    By: */s/ Rachel W. Dempsey*
                                           _____

                                           Rachel W. Dempsey (SBN 310424)
                                           David H. Seligman (admitted *pro hac vice*)
                                           rachel@towardsjustice.org
                                           david@towardsjustice.org
                                           TOWARDS JUSTICE
                                           2840 Fairfax Street, Suite 220
                                           Denver, CO 80207
                                           Tel: (720) 441-2236

                                           Sparky Abraham (SBN 299193)
                                           sparky@jubilee.legal
                                           JUBILEE LEGAL
                                           300 E Esplanade Dr, Ste 900
                                           Oxnard, CA 93036-1275
                                           Tel: (805) 946-0386

                                           *Attorneys for Plaintiff and the Putative Classes*