THEANE EVANGELIS, SBN 243570
    TEvangelis@gibsondunn.com
MADELEINE F. MCKENNA, SBN 316088
    MMcKenna@gibsondunn.com
EMILY SAUER, SBN 324695
    ESauer@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California  90071-3197
Telephone:    213.229.7000
Facsimile:     213.229.7520

MEGAN COONEY, SBN 295174
    MCooney@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, California  92612-4412
Telephone:    949.451.3800
Facsimile:     949.451.4220

*Attorneys for Defendant PetSmart LLC*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| BREANN SCALLY,<br><br>        Plaintiff, on behalf of herself and all others similarly situated,<br><br>   v.<br><br>PETSMART LLC,<br><br>        Defendant. | CASE NO. 4:22-cv-06210-YGR<br><br>**DEFENDANT PETSMART LLC'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION**<br><br>**<u>Hearing</u>:**<br>Date:     February 28, 2023<br>Time:    2:00 p.m.<br>Place:   Courtroom 1, 4th Floor<br>Judge:  Hon. Yvonne Gonzalez Rogers |

Gibson, Dunn &
Crutcher LLP

**TABLE OF CONTENTS**

Page

I.      INTRODUCTION ..................................................................................................................1

II.     ARGUMENT.........................................................................................................................1

        A.      Plaintiff's Challenges to the DRP Must Be Decided by an Arbitrator in the First
                Instance ...................................................................................................................2

                1.      The Delegation Clause Covers Plaintiff's Challenges to the DRP...................2

                2.      The Delegation Clause Is Not Unconscionable ...............................................2

                3.      Whether Plaintiff Seeks Public Injunctive Relief Is Delegated to the
                        Arbitrator ...........................................................................................................4

        B.      Plaintiff's Challenges to the DRP Are Meritless In Any Event ..................................4

                        a)      Plaintiff Failed to Show the DRP is Procedurally Unconscionable ......8

                        b)      Plaintiff Failed to Show the DRP is Substantively Unconscionable... 10

                        c)      Any Unconscionable Provisions Can Be Severed ............................. 13

III.    CONCLUSION...................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aanderud v. Superior Court,*
13 Cal. App. 5th 880 (2017) ............................................................................................. 10

*ABF Cap. Corp. v. Osley,*
414 F.3d 1061 (9th Cir. 2005) ........................................................................................... 21

*Alkutkar v. Bumble Inc.,*
2022 WL 4112360 (N.D. Cal. Sept. 8, 2022) ................................................................... 14

*Ambercroft Trading Ltd. v. Biddy,*
2020 WL 1820599 (N.D. Cal. Apr. 10, 2020) .................................................................. 18

*Armendariz v. Fdn. Health Psychcare Servs.,*
24 Cal. 4th 83 ................................................................................................ 14, 15, 17, 20

*B.D. v. Blizzard Ent., Inc.,*
76 Cal. App. 5th 931 (2022) ............................................................................................. 10

*Brennan v. Opus Bank,*
796 F.3d 1125 (9th Cir. 2015) ............................................................................................. 8

*Brown v. DIRECTV, LLC,*
2013 WL 3273811 (C.D. Cal. June 26, 2013) .................................................................. 15

*Buchsbaum v. Dig. Intel. Sys.,*
LLC, 2020 WL 7059515 (S.D. Cal. Dec. 2, 2020) ...................................................... 19, 20

*Capriole v. Uber Techs., Inc.,*
7 F.4th 854 (9th Cir. 2021) ............................................................................................... 13

*Carbajal v. CWPSC, Inc.,*
245 Cal. App. 4th 227 (2016) ........................................................................................... 18

*Circuit City Stores, Inc. v. Ahmed,*
283 F.3d 1198 (9th Cir. 2002) ........................................................................................... 14

*Clifford v. Quest Software Inc.,*
38 Cal. App. 5th 745 (2019) ............................................................................................. 12

*Coinbase, Inc. v. Bielski,*
No. 22-105 (U.S.) .............................................................................................................. 14

*Colopy v. Uber Techs. Inc.,*
2019 WL 6841218 (N.D. Cal. Dec. 16, 2019) .................................................................. 13

Gibson, Dunn &
Crutcher LLP

*Consul Ltd. v. Solide Enters., Inc.*,
    802 F.2d 1143 (9th Cir. 1986) ............................................................................ 21

*Correa v. Firestone Complete Auto Care*,
    2013 WL 6173651 (N.D. Cal. Nov. 25, 2013) ..................................................... 15

*Edelist v. MBNA Am. Bank*,
    790 A.2d 1249 (Del. Sup. Ct. 2001) .................................................................... 15

*Flores v. Transamerica HomeFirst, Inc.*,
    93 Cal. App. 4th 846 (2001) ............................................................................... 16

*Green Tree Fin. Corp.-Alabama v. Randolph*,
    531 U.S. 79 (2000) ............................................................................................... 9

*Hampton v. PetSmart LLC*,
    2022 WL 2288308 (C.D. Cal. Mar. 18, 2022) ............................................... 9, 10

*Hodges v. Comcast Cable Communications, LLC*,
    21 F.4th 535 (9th Cir. 2021) ................................................................... 11, 12, 17

*Iyere v. Wise Auto Grp.*,
    -- Cal. Rptr. 3d. --, 2023 WL 314122 (Cal. Ct. App. 2023) ............................... 19

*Kilgore v. KeyBank, N.A.*,
    718 F.3d 1052 (9th Cir. 2013) ...................................................................... 12, 16

*Loewen v. Lyft Inc.*,
    129 F.Supp.3d 945 (N.D. Cal. Sept. 15, 2015) ................................................... 15

*MacClelland v. Cellco Partnership*,
    2022 WL 2390997 (N.D. Cal. July 1, 2022) ................................................. 16, 17

*Madrigal v. AT & T Wireless Servs., Inc.*,
    2010 WL 5343299 (E.D. Cal. Dec. 20, 2010) ...................................................... 9

*Martinez-Gonzalez v. Elkhorn Packing Co. LLC*,
    25 F.4th 613 (9th Cir. 2022) ............................................................................... 15

*McGill v. Citibank, N.A.*,
    2 Cal. 5th 945 (2017) .................................................................................... 11, 12

*McGrath v. DoorDash, Inc.*,
    2020 WL 6526129 .............................................................................................. 17

*Millan v. Chase Bank USA, N.A.*,
    533 F. Supp. 2d 1061 (C.D. Cal. 2008) .............................................................. 21

*Mohamed v. Uber Techs., Inc.*,
    848 F.3d 1201 (9th Cir. 2016) ................................................................. 9, 10, 13

Gibson, Dunn &
Crutcher LLP

iii

*Momot v. Mastro,*
    652 F.3d 982 (9th Cir. 2011) ................................................................................................ 10

*Moule v. United Parcel Serv. Co.,*
    2016 WL 3648961 (E.D. Cal. July 7, 2016) ................................................................. 15, 16

*Nedlloyd Lines B.V. v. Superior Court,*
    3 Cal. 4th 459 (1992) ............................................................................................................ 20

*Nezri v. PayPal, Inc.,*
    -- F. Supp. 3d. --, 2022 WL 16918024 (C.D. Cal. Jun. 13, 2022) ...................................... 21

*Nguyen v. Barnes & Noble Inc.,*
    763 F.3d 1171 (9th Cir. 2014) .............................................................................................. 21

*Poublon v. C.H. Robinson Co.,*
    846 F.3d 1251 (9th Cir. 2017) ........................................................................................ 14, 20

*Raymundo v. ACS State & Local Solutions, Inc.,*
    2013 WL 2153691 (N.D. Cal. May 16, 2013) ..................................................................... 15

*Rent-A-Ctr., W., Inc. v. Jackson,*
    561 U.S. 63 (2010) ....................................................................................................... 7, 8, 10

*Sanchez v. Valencia Holding Co., LLC,*
    61 Cal. 4th 899 (2015) ......................................................................................................... 14

*Saravia v. Dynamex, Inc.,*
    310 F.R.D. 412 (N.D. Cal. 2015) ........................................................................................ 15

*Serna v. Northrop Grumman Corp.,*
    2016 WL 11693571 (C.D. Cal. July 27, 2016) .................................................................... 19

*Solymar Invs., Ltd. v. Banco Santander S.A.,*
    672 F.3d 981 (11th Cir. 2012) .............................................................................................. 18

*Standard Gen. L.P. v. Charney,*
    2017 WL 6498063 (Del. Ch. Dec. 19, 2017) ...................................................................... 14

*Swain v. LaserAway Med. Grp., Inc.,*
    57 Cal. App. 5th 59 (2020) .................................................................................................. 18

*Tan v. Grubhub, Inc.,*
    2016 WL 4721439 (N.D. Cal. July 19, 2016) ...................................................................... 17

*Taylor v. TA Operating, LLC,*
    2023 WL 171359 (E.D. Cal. Jan. 12, 2023) ....................................................... 9, 15, 20, 21

*Tompkins v. 23andMe, Inc.,*
    840 F.3d 1016 (9th Cir. 2016) .............................................................................................. 16

*Trout v. Comcast Cable Commc'ns, LLC*,
   2018 WL 4638705 (N.D. Cal. Mar. 15, 2018)..............................................................15

*Ulbrich v. Overstock.Com, Inc.*,
   887 F. Supp. 2d 924 (N.D. Cal. 2012).......................................................................20

*Vaughn v. Tesla*,
   -- Cal. Rptr. 3d --, 2023 WL 29132 (2023)................................................................13

**STATUTES**

9 U.S.C. § 3.......................................................................................................................14

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION
CASE NO. 4:22-CV-06210-YGR

## I.   INTRODUCTION

Plaintiff BreAnn Scally does not dispute that she agreed to resolve her disputes with PetSmart in individual arbitration. Instead, she attempts to avoid her agreement to arbitrate by arguing that the Dispute Resolution Policy ("DRP") she agreed to—and decided not to opt out of—was unfair and one-sided. Each of Plaintiff's arguments falls flat. Critically, under the plain terms of the parties' agreement, any disputes regarding the "enforceability" of the DRP must be decided by an arbitrator, not a court. Dkt. 14-2 at ¶ 3. And where, as here, the delegation clause *itself* is not unconscionable, the delegation clause must be enforced according to its terms as long as there has been the minimal showing that an agreement to arbitrate exists and it covers the dispute at issue. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010). As PetSmart met those prerequisites (and Plaintiff does not contend otherwise), an arbitrator, not a court, must resolve Plaintiff's unconscionability arguments.

Moreover, even if the Court could address Plaintiff's challenges to the DRP, Plaintiff offers no valid reason for invalidating the parties' agreement to arbitrate. Whether applying Delaware law (the parties' agreed-upon choice) or California law (Plaintiff's contention) to evaluate the DRP, Plaintiff cannot avoid arbitration by suggesting that her claims for private injunctive relief would actually impact the public at large. As Plaintiff's complaint shows, the injunctive relief she seeks is aimed at benefiting a discrete group of individuals—current and future PetSmart groomers and bathers—not the general public. Accordingly, there is no need to even reach the question of how *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017) affects the DRP, because there is no public injunctive relief request here at all.

Plaintiff's other unconscionability contentions are similarly flawed. The DRP is not procedurally unconscionable, as Plaintiff had an opportunity to (but chose not to) opt out of arbitration even *after* signing the DRP. Likewise, the DRP is not substantively unconscionable—it contains standard terms that have repeatedly been upheld. Finally, even if any of the provisions Plaintiff challenges were unconscionable, they can be severed from the remainder of the agreement.

Because Plaintiff is bound by an enforceable agreement to arbitrate, the Court should grant PetSmart's motion and compel all of Plaintiff's claims to individual arbitration.

## II.   ARGUMENT

The Court should grant PetSmart's Motion for two reasons. First, because Plaintiff's challenges

1   to the DRP do not address the agreement's clear delegation clause, they must be resolved by an

2   arbitrator.  Second, even if these questions were not delegated, Plaintiff has failed to prove, under

3   Delaware or California law, that the DRP was procedurally and substantively unconscionable.

4   **A.      Plaintiff's Challenges to the DRP Must Be Decided by an Arbitrator in the First Instance**

5            As Plaintiff does not dispute, "parties can agree to arbitrate 'gateway' questions of

6   'arbitrability,'" and that these delegation provisions must be "enforce[d] . . . according to their terms."

7   *Rent-A-Center*, 561 U.S. at 67–69; *see also Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th Cir.

8   2015).  Here, the delegation clause in the parties' agreement is clear:  all "issues of arbitrability[,] such

9   as the formation, interpretation, applicability or enforceability of this DRP," "must *only* be heard and

10  decided by the appointed arbitrator." Dkt. 14-2 at ¶ 3 (emphasis added).  Because Plaintiff does not

11  dispute that she entered into the DRP, the delegation clause must be "enforce[d] . . . according to [its]

12  terms," *Rent-A-Center*, 561 U.S. at 67, which alone warrants granting the Motion.

13           **1.      The Delegation Clause Covers Plaintiff's Challenges to the DRP**

14           In an attempt to avoid her agreement to arbitrate her disputes with PetSmart, Plaintiff argues

15  that: (1) "[t]he DRP is unenforceable" because it waives the right to seek public injunctive relief or

16  assert claims in mass arbitrations  (Opp. at 4);[1] and (2) the DRP is "unenforceable" because "the DRP

17  as a whole is unconscionable," including "the delegation clause itself."  *Id.* at 14.  In other words, *both*

18  of Plaintiff's arguments concern the "enforceability of th[e] DRP"—arguments that are expressly

19  delegated to the arbitrator under the plain language of the parties' agreement. Dkt. 14-2 at ¶ 3.

20           **2.      The Delegation Clause Is Not Unconscionable**

21           As Plaintiff appears to concede, where, as here, an arbitration agreement delegates questions of

22  arbitrability to the arbitrator, courts may not consider whether the arbitration agreement *as a whole* is

23  unconscionable.  *See* Opp. at 14.  Rather, the Court's review is limited to whether "the particular

24  agreement to delegate arbitrability—the Delegation Provision—is *itself* unconscionable."  *Brennan*,

25  796 F.3d at 1132 (emphasis added); *id.* at 1133 (courts may not consider "the validity of [a] Delegation

26  _____

27  [1] As Plaintiff notes, there is a limited exception to the DRP's broad delegation clause for "disputes
    regarding the . . . enforceability . . . of the Mass Arbitrations . . . provisions." Dkt. 14-2, ¶ 4. However,
28  for the reasons stated below, Plaintiff lacks standing to challenge the DRP's Mass Arbitrations
    provision, and the provision is not unconscionable in any event. *See infra* Section II.B.2.

Provision" where the plaintiff does not 'make any arguments specific to the delegation provision' and instead argues 'that the Arbitration Clause *as a whole* is unconscionable'"); *Hampton v. PetSmart LLC*, 2022 WL 2288308, at *3 (C.D. Cal. Mar. 18, 2022) (enforcing the same DRP at issue here, and holding that where a plaintiff "does not challenge the delegation provision" specifically, any unconscionability argument "must be brought before the arbitrator").   Unless the delegation clause itself is unconscionable, there is nothing for the Court to do but compel the parties' disputes to the arbitrator.

Here, Plaintiff states that the delegation clause is unconscionable, but her unconscionability arguments all focus on provisions *outside* the delegation clause.  These arguments related to the DRP's cost-splitting provision (Opp. at 15–17), the arbitrator selection process (*id.* at 18–19), and provisions in the Grooming Academy Training agreement—which is not part of the DRP and is a separate agreement entirely (*id.* at 17–18; *see* Dkt. 24-2)—go "to the substantive unconscionability of provisions *other than* the delegation clause" and therefore cannot invalidate the delegation clause.  *Taylor v. TA Operating, LLC*, 2023 WL 171359, at *9 (E.D. Cal. Jan. 12, 2023) (emphasis added); *see also Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210–11 (9th Cir. 2016) (noting that "when considering an unconscionability challenge to a delegation provision, the court must consider only arguments 'specific to the delegation provision,'" and holding delegation clause was not unconscionable).

With respect to the arbitrator-selection provision and the Grooming Academy Training agreement provisions, Plaintiff does not even attempt to explain how "those provisions are unconscionable as applied to the delegation clause." *Taylor*, 2023 WL 171359 at *9 (emphasis omitted); *see* Opp. at 17–19.  As to the cost-splitting provision, Plaintiff argues this provision applies "[w]ith respect to the delegation clause specifically" because it would require to her to "be prepared to pay thousands of dollars" to make her unconscionability arguments to an arbitrator (Opp. at 17), but provides no support for that claim.  An identical argument was rejected in *Madrigal v. AT & T Wireless Servs., Inc.*, 2010 WL 5343299 (E.D. Cal. Dec. 20, 2010).  There, the court concluded that a fee-splitting provision which required the losing party to pay the prevailing party's fees and costs did not render the *delegation clause* unenforceable, because "Plaintiff provide[d] no evidence that the cost of submitting threshold questions of arbitrability to the arbitrator is so high as to impede[] Plaintiff's ability to challenge the arbitration agreement." *Id.* at *7; *see also Green Tree Fin. Corp.-Alabama v.*

*Randolph*, 531 U.S. 79, 92 (2000) (where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs"). Because Plaintiff has failed to show the delegation clause *itself* is unenforceable, Plaintiff's unconscionability arguments are delegated to the arbitrator.

Even if Plaintiff *had* challenged the delegation clause specifically, there is nothing unconscionable about the DRP's delegation clause. Courts have enforced agreements to arbitrate using nearly identical delegation language. *See Hampton*, 2022 WL 2288308, at *3 (enforcing the DRP); *Mohamed*, 848 F.3d at 1208 (enforcing clause delegating "disputes arising out of or relating to interpretation or application of this Arbitration Provision, including [its] enforceability, revocability or validity"); *see also Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011); *B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 957 (2022); *Aanderud v. Superior Court*, 13 Cal. App. 5th 880, 892 (2017).

**3.    Whether Plaintiff Seeks Public Injunctive Relief Is Delegated to the Arbitrator**

Plaintiff also argues this Court may decide whether the DRP is unenforceable because she contends it waives the right to seek public injunctive relief. But even if the enforceability of the waiver is not delegated, the question whether Plaintiff is even *seeking* a public injunction is still delegated. The carve-out to the delegation clause states that disputes "regarding the applicability, interpretation, enforceability, and or/severability of the . . . Waiver provisions of this DRP" are not delegated and are to be decided by a court. Dkt. 14-2 at ¶ 4. Plaintiff takes this to mean that everything related to her alleged public injunction is "for this Court to decide." Opp. at 4. Not so. Here, the parties' dispute is more fundamental: whether Plaintiff seeks public or private injunctive relief. The parties' dispute thus centers not on whether the DRP's waiver provisions can be enforced, but on the antecedent question of the *nature* of the relief Plaintiff seeks. This question is for an arbitrator. Dkt. 14-2 at ¶ 3. Accordingly, each of Plaintiff's supposed challenges to the delegation clause fail. The delegation clause requires all threshold issues to be arbitrated, and under binding Supreme Court precedent, that clause must be enforced "according to [its] terms." *Rent-A-Center*, 561 U.S. at 67. The Court should grant the Motion and direct the arbitrator to resolve the remaining issues.

**B.    Plaintiff's Challenges to the DRP Are Meritless In Any Event**

Even if the Court could address the parties' disputes regarding the enforceability of the DRP,

each of Plaintiff's challenges would fail.  First, Plaintiff's requested injunction is a *private* injunction under binding Ninth Circuit authority, and thus does not prevent arbitration of Plaintiff's claims. Second, Plaintiff has failed to carry her burden that the DRP is procedurally or substantively unconscionable in any respect.  Third, as Plaintiff concedes, the choice-of-law provision is irrelevant at this stage (*see* Opp. at 23), because the DRP is enforceable under Delaware or California law.[2]

### 1.   Plaintiff's Request for Injunctive Relief Does Not Prevent Arbitration

Plaintiff argues the DRP cannot be enforced because it would require her to waive her public injunction claims.  That argument is premised on a false assumption:  that Plaintiff actually seeks a public injunction.  In reality, under binding Ninth Circuit law, Plaintiff does not seek public injunctive relief at all, but rather an injunction that could only ever benefit a narrow subset of Californians.  Even if this were not so, the public injunctive relief waiver is severable from the remainder of the DRP.

In *McGill*, the California Supreme Court held that under state law, arbitration agreements cannot require signatories to waive the right to bring claims for public injunctive relief in court, but it did not fully resolve what qualifies as "public injunctive relief."  *McGill*, 2 Cal. 5th at 955.  The Ninth Circuit resolved that issue in *Hodges  v. Comcast Cable Communications, LLC*, 21 F.4th 535 (9th Cir. 2021).  As the court explained, "whether a requested injunction is public or private depends upon who are the *primary* beneficiaries" of the requested relief.  *Id.* at 546 (emphasis in original).  Specifically, public injunctive relief "is limited to forward-looking injunctions that seek to prevent future violations of law for the benefit of the general public as a whole, as opposed to a particular class of persons, and that do so without the need to consider the individual claims of any non-party."  *Id.* at 542.  But any injunction that would "benefit [only] a discrete class of persons" is "private injunctive relief."  *Id.* at 543.  Even if private injunctive relief would have "an incidental public benefit," this "is not sufficient to establish that the requested injunction is actually public relief."  *Id.* at 546.  Further, even where "the complaint labels the requested relief as 'public,'" courts "must look beyond such conclusory assertions"

---

[2] Plaintiff states that PetSmart "concede[s]" California law applies to the public injunctive relief analysis.  Opp. at 5 n.1.  Plaintiff is mistaken.  The DRP is governed by the FAA (as Plaintiff agrees) and the choice-of-law provision means that any questions of state law are governed by Delaware law. *See* Mot. at 4.  In its Motion and here, PetSmart evaluates both Delaware and California law on Plaintiff's unconscionability challenges because the DRP is enforceable under either state's law.

in applying the test set forth in *Hodges.  Id.* at 548.

The court in *Hodges* discussed two cases illustrating when a plaintiff seeks *private* injunctive relief.  In the first, *Kilgore v. KeyBank, N.A.*, 718 F.3d 1052, 1056 & n.3 (9th Cir. 2013) (en banc), the plaintiffs alleged that the loans and contracts they signed to attend a helicopter pilot training academy violated federal law.  The plaintiffs sought an injunction to prevent the defendant lender from reporting their debts to credit agencies and from enforcing the student loan notes.  *Id.*  The Ninth Circuit held that the plaintiffs sought private injunctive relief, because the requested injunction "plainly would benefit only" the contracting parties rather than the general public.  *Id.* at 1060–61.

In the second case, *Clifford v. Quest Software Inc.*, 38 Cal. App. 5th 745, 753 (2019), the plaintiff sought to enjoin his employer from classifying him and other employees as "exempt employee[s]," and to enjoin future wage-and-hour violations.  The California Court of Appeal held this was not a request for public injunctive relief because the only "potential beneficiaries" were "Quest's current employees, not the public at large."  *Id.*  As the court noted in *Hodges*, *Clifford* confirms that "even prospective injunctive relief [i]s not 'public' when the primary beneficiaries [are] a defined group of similarly situated persons, rather than the general public."  *Hodges*, 21 F.4th at 543.

Drawing from these precedents, the Ninth Circuit concluded in *Hodges* that the plaintiff there sought private rather than public injunctive relief.  The plaintiff in *Hodges* alleged that Comcast's data collection practices violated cable subscribers' privacy rights, and sought a variety of injunctive relief, such as changes to how Comcast notified its subscribers of its data collection practices.  *Id.* at 548–49. The court concluded that the requested injunctions stood "to benefit only Comcast 'cable subscribers'—i.e., . . . a 'group of individuals similarly situated to the plaintiff.'"  *Id.* at 549 (quoting *McGill*, 2 Cal.5th at 955).  Because the relief did not "*primarily* benefit the general public as a more diffuse whole," the requested injunction did not implicate *McGill.  Id.* (emphasis in original).

Here, Plaintiff's request for injunctive relief only stands to benefit a group of Californians that is even narrower than the class in *Hodges*.  Specifically, by asking the Court only to regulate the terms on which PetSmart engages and advertises work opportunities *as pet groomers to its current employees*, Plaintiff's request focuses on the discrete subset of current employees: those who are prospective pet groomers who may enter into PetSmart's grooming academy.  *See* Dkt. 1-2, Ex. B, ¶ 144–46.  As

1   Plaintiff's Complaint admits, "[i]n order to be eligible for promotion to groomer"—and therefore to

2   have the opportunity to even enter into the grooming academy—prospective employees must be hired

3   as "bathers." *Id.* ¶¶ 14–15. "Once an employee has been a bather for the required amount of time and

4   completed the other prerequisites, they are *eligible* for the training and promotion to groomer." *Id.*

5   ¶ 16. In other words, the group of individuals who stand to "primarily benefit" from any injunction

6   regarding advertising or licensure are PetSmart *bathers* who may have a future opportunity to the enter

7   the grooming academy. The public at large does not have this immediate opportunity—only certain

8   bathers already employed by PetSmart do.

9        The false advertising examples Plaintiff points to in *McGill*, in contrast, concerned the

10   advertisement of a consumer product or service marketed to the public at large. There, members of the

11   general public could take immediate action, without prerequisites, to act on the advertisements and

12   suffered the alleged harm the injunction would prevent. Plaintiff's requested injunction, though, could

13   only ever affect PetSmart employees already working as bathers. The injunctive relief Plaintiff seeks

14   is therefore narrower even than in *Hodges*, and *McGill* does not apply. *See also Colopy v. Uber Techs.*

15   *Inc.*, 2019 WL 6841218, at *3 (N.D. Cal. Dec. 16, 2019) (finding request for injunctive relief aimed at

16   a class of alleged putative employees to be private, not public, under the *McGill* rule); *Capriole v. Uber*

17   *Techs., Inc.*, 7 F.4th 854, 870 (9th Cir. 2021) (relief regulating drivers' relationship with Uber is

18   primarily directed at drivers and "only 'benefit[s] the general public incidentally'").

19        Plaintiff's reference to a California Court of Appeal decision in a footnote of her Opposition

20   does not change this outcome. Plaintiff suggests the Court of Appeal's recent decision in *Vaughn v.*

21   *Tesla*, -- Cal. Rptr. 3d --, 2023 WL 29132 (2023) conflicts with *Hodges*'s construction of *McGill*. But

22   this Court is bound to follow Ninth Circuit precedent unless it is overruled. *Mohamed*, 848 F.3d at

23   1211 ("The district court does not have the authority to ignore circuit court precedent.") At any rate,

24   *Vaughn* is inapplicable, because there the court's decision rested on "the prevention of discrimination,"

25   which "the Legislature and the California Supreme Court have clearly stated" is an inherently public,

26   rather than private, interest. *Vaughn*, 2023 WL 29132 at *12 n.16. Plaintiff's requested injunction is

27   not supported by similarly public-facing interests.

28        Finally, even if Plaintiff did seek public injunctive relief (and she does not), and even if this

Gibson, Dunn &
Crutcher LLP

7

1    question were not delegated to an arbitrator (it is), the rest of her claims should still be compelled to

2    arbitration while a claim for public injunctive relief remains in court:  the DRP provides that PetSmart

3    can provide "express written consent" to allow the waiver provision to become severable.  Dkt. 14-2

4    at ¶ 26.  Moreover, any claim not compelled to arbitration should be stayed pending the outcome of the

5    arbitration of any arbitrable claims.  *See* 9 U.S.C. § 3.[3]

6    **2.    The DRP Is Not Unconscionable**

7    Plaintiff's remaining unconscionability arguments are also unavailing.  As "the party opposing

8    arbitration," Plaintiff "bears the burden of proving any defense, such as unconscionability."  *Poublon*

9    *v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017).  A finding of unconscionability is "rigorous

10   and demanding for arbitration clauses," *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 912

11   (2015), and procedural *and* substantive unconscionability "must both be present" to invalidate an

12   agreement, *Armendariz v. Fdn. Health Psychcare Servs.*, 24 Cal. 4th 83. 114 (2000); *Standard Gen.*

13   *L.P. v. Charney,* 2017 WL 6498063, at *17 (Del. Ch. Dec. 19, 2017) ("both substantive and procedural

14   unconscionability" are required under Delaware law).  Plaintiff has not met her burden to prove *either*

15   procedural or substantive unconscionability, and the DRP should therefore be enforced.

16   **a)    Plaintiff Failed to Show the DRP is Procedurally Unconscionable**

17   Plaintiff alleges the DRP is procedurally unconscionable because: (1) she had no meaningful

18   choice in accepting the arbitration agreement; and (2) she had to click on a hyperlink to view some of

19   the DRP's terms.  The first assertion is inaccurate, and the second is not procedural unconscionability.

20   As to her first argument, Plaintiff argues that, due to generalized pressure that job-seekers face

21   to assent to terms, Plaintiff had no meaningful choice in accepting the DRP.  Opp. at 11.  But Plaintiff

22   omits a critical fact:  the DRP informed Plaintiff she did not need to accept the agreement to arbitrate,

23   and that she could opt out of arbitration *even after signing.*  Dkt. 14-2 at ¶ 21.  The Ninth Circuit has

24   held that arbitration agreements are not procedurally unconscionable when, as here, there was "a

25   meaningful opportunity to opt out."  *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir.

26   2002); *see also Alkutkar v. Bumble Inc*., 2022 WL 4112360, at *9 (N.D. Cal. Sept. 8, 2022) (similar).

27
28

---

[3] Although district courts in the Ninth Circuit currently have discretion to stay nonarbitrable claims pending appeal of a denial of a motion to compel, the U.S. Supreme Court will decide this Term whether such stays are required by the FAA.  *See Coinbase, Inc. v. Bielski*, No. 22-105 (U.S.).

DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION
CASE NO. 4:22-CV-06210-YGR

Gibson, Dunn &
Crutcher LLP

"Although [Plaintiff] insists this was a contract of adhesion, the opt-out opportunity means it was not." *Trout v. Comcast Cable Commc'ns, LLC*, 2018 WL 4638705, at \*5 (N.D. Cal. Mar. 15, 2018). The DRP's opt-out provision offered Plaintiff a "meaningful choice" whether to agree to arbitrate her disputes with PetSmart. And "there can be no procedural unconscionability where [Plaintiff] was provided with the opportunity to opt out of the arbitration provision and she deliberately chose not to do so." *Taylor*, 2022 WL 1004560, at \*4.

Similarly, courts have rejected Plaintiff's suggestion that the use of hyperlinks renders an agreement procedurally unconscionable. *See, e.g., Correa v. Firestone Complete Auto Care*, 2013 WL 6173651, at \*1, 3 (N.D. Cal. Nov. 25, 2013) (finding no unfair surprise where "the employee must review a screen that offers a link to the full text of the [arbitration agreement]" because the employee "was given an opportunity to review the terms of the [arbitration agreement] and declined to do so"); *Loewen v. Lyft Inc.*, 129 F.Supp.3d 945, at \*1, 8 (N.D. Cal. Sept. 15, 2015); *Brown v. DIRECTV, LLC*, 2013 WL 3273811, at \*1–2, 8 (C.D. Cal. June 26, 2013); *Raymundo v. ACS State & Local Solutions, Inc.*, 2013 WL 2153691, at \*4 (N.D. Cal. May 16, 2013). In fact, the only case Plaintiff cites in support of her contrary proposition, *Saravia v. Dynamex, Inc.*, 310 F.R.D. 412 (N.D. Cal. 2015), is inapplicable—it involved a Plaintiff whose "comprehension of English was limited." *Id.* at 420.

Here, when Plaintiff applied to PetSmart, she was shown a clear, all-caps, bolded, and underlined link that directed her to the DRP. *See* Dkt. 14-1 at ¶ 9. This provided an "opportunity to review the terms." *See Correa*, 2013 WL 6173651 at \*3. Once again, that Plaintiff declined to review the DRP does not change the outcome. *See Moule v. United Parcel Serv. Co.*, 2016 WL 3648961, at \*7 (E.D. Cal. July 7, 2016) (finding no surprise where Plaintiff chose not to review terms); *Martinez-Gonzalez v. Elkhorn Packing Co. LLC*, 25 F.4th 613, 625 (9th Cir. 2022) ("[A] party's failure to read a contract . . . before signing it is no defense to the contract's enforcement.").

Plaintiff has not carried her burden of proving the DRP was procedurally unconscionable, and *all* of her unconscionability claims therefore fail. *See Armendariz*, 24 Cal. 4th at 114; *Edelist v. MBNA Am. Bank*, 790 A.2d 1249, 1261 (Del. Sup. Ct. 2001) (enforcing arbitration agreement in which allegedly unconscionable terms were "clearly articulated" and accepted).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

b)       **Plaintiff Failed to Show the DRP is Substantively Unconscionable**

Because Plaintiff has not shown the DRP was procedurally unconscionable, there is no need for the Court to reach substantive unconscionability.  *Kilgore*, 718 F.3d at 1058.  However, if the Court reaches the issue, it should conclude that PetSmart's DRP is not substantively unconscionable either.  To assess a provision's substantive unconscionability, "the focus of the Court's inquiry is whether an agreement is one-sided and will have an overly harsh effect on the party not given an opportunity to negotiate its terms."  *Moule*, 2016 WL 3648961 at *7 (citing *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 854 (2001)).  Plaintiff alleges four provisions in the DRP are harsh or one-sided: (1) the mass arbitration provision, (2) the cost-splitting provision, (3) the Grooming Academy Training agreement's provisions, and (4) the arbitrator-selection provision, none of which meet this high bar.

**Mass Arbitrations Provision.**  Plaintiff's claims that the mass arbitration provision renders the DRP unconscionable, but her argument mischaracterizes the provision, and at any rate the mass arbitration clause is completely inapplicable to her situation.  According to Plaintiff, the DRP restricts employees from choosing their own counsel, because where 100 employees assert similar claims through the same counsel over a one-year period, a hypothetical 101st employee cannot assert claims against PetSmart through the same counsel as the 100 earlier hypothetical employees.  Opp. at 12–13.

First, that is not how the mass arbitrations provision actually works.  The provision provides that "when 100 or more arbitration demands asserting the same or similar Covered disputes are made" by claimants "represented by the same lawyer(s) or law firm(s)," the parties will not arbitrate "the Covered Disputes at issue therein, *which instead will be litigated in a court of competent jurisdiction*."  Dkt. 14-2 at ¶ 13 (emphasis added).  In other words, the 101st employee is free to choose whatever counsel she wants—but if she chooses the same counsel as 100 other employees, the parties will litigate in court, rather than arbitrate.  Thus, the effect of the provision is more akin to a forum-selection clause than a limitation on choice of counsel.  *See Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1027–30 (9th Cir. 2016) (requiring party challenging forum selection clause as unconscionable to "demonstrate that enforcement of the clause would be unreasonable under the circumstances of the case").

Plaintiff's reliance on *MacClelland v. Cellco Partnership*, 2022 WL 2390997 (N.D. Cal. July 1, 2022), does not change the analysis.  The provision at issue in *MacClelland* was markedly different

from the DRP's.  The *MacClelland* arbitration agreement contained a 180-day contractual statute of limitations for all disputes, whereas there is no limitations period in the DRP.  *Id.* at *5; *see* Dkt. 14-2. Significantly, the *MacClelland* arbitration agreement also required claimants bringing disputes to participate in a coordinated arbitration proceeding that, the court found, could create delays and leave customers waiting years to *begin* resolving their claims.  *MacClelland*, 2022 WL 2390997 at *12.  And, in combination with the agreement's statute of limitations, this delay could bar their claims entirely. *Id.* at *13.  The DRP does not require *any* employees to wait *at all*.  If fewer than 100 claims are brought by the same counsel (as is the case here), they can all be arbitrated without delay.  And if there are more than 100, then those can be litigated without delay. Dkt. 14-2 at ¶ 13; *see McGrath v. DoorDash, Inc.*, 2020 WL 6526129 at *10 (upholding mass arbitration provision where plaintiff offered "little concrete evidence . . . that the Mass-Claims Protocol would result in significant delay").

Second, Plaintiff has no standing to challenge the mass arbitration provision here because it has no bearing on her claims:  she is neither part of a mass arbitration, nor has she alleged that the DRP impaired her ability to choose her counsel.  *See Hodges*, 21 F.4th at 541 (courts must not "stretch to invalidate contracts based on hypothetical issues that are not actually presented in the parties' dispute"); *Tan v. Grubhub, Inc.*, 2016 WL 4721439, at *6 (N.D. Cal. July 19, 2016) (plaintiff had "no standing to challenge the applicability or enforceability of the arbitration and class action waiver provisions . . . because, in light of [their] decision to opt out, they do not apply").  The DRP's mass arbitration provision has no impact on Plaintiff one way or another, and is not a basis to invalidate the agreement.

In short, PetSmart employees wishing to pursue claims against PetSmart may do so with whichever counsel they wish, at any time within the statute of limitations period provided by law, and without having to wait.  PetSmart's mass arbitration provision is not substantively unconscionable.

**Cost-Sharing Provision.**  Plaintiff next attacks the cost-sharing provision, arguing that under *Armendariz*, an employment contract cannot require mandatory equal sharing of arbitration fees.  But the cases Plaintiff rely on do not apply here:  *Armendariz*'s cost-sharing rule, by its own terms, applies only "in the particular context of *mandatory* employment arbitration agreements." *Armendariz*, 24 Cal. 4th at 103 n.8 (emphasis added).  Here, the DRP was not a mandatory agreement, and Plaintiff could have opted out of it had she chosen to do so. *See supra* Part II.B.2.a (describing the opt-out process).

1   In any event, the DRP's cost-sharing provision is not unconscionable, as it does not automatically

2   require employees to pay an equal share of the arbitration fees.  Rather, it provides that "[t]o the extent

3   required by binding United States Supreme Court precedent, [PetSmart] will pay up to *all* of the

4   arbitration forum costs (including arbitrator fees)."  Dkt. 14-2 at ¶ 16 (emphasis added).

5         **Grooming Academy Training Agreement.**  Plaintiff next argues PetSmart's Grooming

6   Academy Training agreement authorizes PetSmart to file a civil claim against the Plaintiff in certain

7   circumstances, and that this renders *the DRP* one-sided.  But the training agreement is not the

8   arbitration agreement.  The language of an entirely separate training agreement has no bearing on

9   whether the Court can enforce the DRP, and even if it could, the interplay between these two separate

10  contracts must be submitted to an arbitrator to decide.  Indeed, "where there are multiple agreements

11  between the parties," the court must determine whether an arbitration agreement exists between the

12  parties and, if so, send the dispute to arbitration to resolve the second contract's effect, if any, on the

13  arbitration agreement.  *Ambercroft Trading Ltd. v. Biddy*, 2020 WL 1820599, at *5 (N.D. Cal. Apr. 10,

14  2020); *see also Solymar Invs., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 992–93 (11th Cir. 2012)

15  (even where plaintiff argued a separate agreement rendered arbitration agreement unenforceable, the

16  court's responsibility was to apply the arbitration agreement in light of the parties' delegation clause).

17        None of the cases Plaintiff cites interpret an extrinsic agreement.  Instead, they each address

18  one-sided language in the arbitration agreement itself.  *Swain v. LaserAway Med. Grp., Inc.*, 57 Cal.

19  App. 5th 59, 73 (2020) (finding unconscionability where "*the arbitration agreement* lacks mutuality")

20  (emphasis added); *Carbajal v. CWPSC, Inc.*, 245 Cal. App. 4th 227, 249 (2016) (similar).  None

21  provides a basis upon which to invalidate the DRP based on language in a separate contract.

22        **Arbitrator Selection Process.** Plaintiff's argument that the arbitrator-selection provision is

23  unconscionable is particularly far-reaching.  Despite the fact that the DRP allows the parties to *mutually*

24  *choose* the arbitration provider and provides four suggested (but not mandatory) options, Plaintiff

25  argues the arbitrator-selection provision is one-sided simply because the list of suggested arbitration

26  providers does not include JAMS or AAA.  Opp. at 18–19.  According to Plaintiff, the listed providers

27  "lack due process protections."  *Id.* at 19.  The implications of Plaintiff's arguments are enormous:

28  under her logic, an arbitration agreement would only be valid if it designates JAMS or AAA as

1    providers, creating a virtual monopoly that prevents any competitor providers from offering their

2    services.  That is not, nor can it be, the law.

3        Plaintiff provides no evidence to support her claim that the well-recognized arbitration

4    providers listed in the DRP—the International Institute for Conflict Prevention & Resolution, Judicate

5    West, ADR Services, Inc., and IVAMS—are insufficient arbitral forums.  *See Iyere v. Wise Auto Grp.*,

6    -- Cal. Rptr. 3d. --, 2023 WL 314122, at *7 (Cal. Ct. App. 2023) (in challenging an arbitration provider,

7    Plaintiff must provide "evidence that arbitrators associated with one service tend to rule in favor of

8    employers, either generally or in particular types of cases").  In fact, Plaintiff has not cited, and

9    PetSmart is not aware of, any case disapproving of the rules of any of these arbitration providers.

10   Moreover, courts routinely uphold agreements where—as here—the plaintiff has a say in the arbitration

11   provider.  *Serna v. Northrop Grumman Corp.*, 2016 WL 11693571, at *8 (C.D. Cal. July 27, 2016) (no

12   unconscionability where both parties must follow the same procedure to choose a "reputable arbitration

13   organizations" from a predetermined list of "arbitrator panels and arbitration rules").

14       As a result, Plaintiff has failed to show that any term (or combination of terms) renders the DRP

15   generally—or the delegation clause specifically—substantively unconscionable.

16       **c)      Any Unconscionable Provisions Can Be Severed**

17       According to Plaintiff, the allegedly unconscionable provisions in the DRP require the court to

18   void the parties' entire to agreement to arbitrate.  But where, as here, an arbitration agreement allows

19   for severance, "the strong legislative and judicial preference is to sever" any unconscionable terms

20   "and enforce the balance of the agreement."  *Buchsbaum v. Dig. Intel. Sys.*, LLC, 2020 WL 7059515,

21   at *7 (S.D. Cal. Dec. 2, 2020).  And here, the provisions Plaintiff identifies are all severable.  Dkt. 14-

22   2 at ¶ 26 ("If any provision of this DRP . . . is deemed invalid or unenforceable, it will be severed.").

23       Nonetheless, Plaintiff argues that the mass arbitration provision and representative action

24   waiver are not severable.  Opp. at 13.  But the DRP provides that PetSmart can provide "express written

25   consent" "while enforcing this DRP" to allow those provisions to become severable.  Dkt. 14-2 at ¶ 26.

26   Should the Court determine that the DRP's representative action waiver or mass arbitration provision

27   are applicable and unconscionable (they are not), PetSmart can and does consent to severance.

28       Further, Plaintiff argues that the DRP is *permeated* with unconscionability, and that any

1   unconscionable terms cannot be severed.  Opp. at 19–20.  But even where "there are multiple unlawful

2   provisions in [an] Arbitration Agreement, this fact alone does not mean the agreement is permeated

3   with unconscionability."  *Buchsbaum*, 2020 WL 7059515 at *9; *see also Poublon*, 846 F.3d at 1273.

4   Plaintiff's contrary argument rests on *Armendariz*, but that case involved unique considerations not

5   present here.  There, the court explained that because "the agreement's unconscionable terms could not

6   be easily severed;" "the trial court would have had to 'reform the contract, not through severance or

7   restriction, but by augmenting it with additional terms.'"  *Buchsbaum*, 2020 WL 7059515, at *8

8   (quoting *Armendariz*, 24 Cal. 4th at 124–25).  Here however, each of the provisions Plaintiff challenges

9   can be dropped from the parties' agreement without needing to supply substitute terms. *See Ulbrich v.*

10  *Overstock.Com, Inc.*, 887 F. Supp. 2d 924, 933 (N.D. Cal. 2012) (Gonzalez-Rogers, J.) (severing cost-

11  sharing provision).  The agreement in *Armendariz* also offered the plaintiff there no opportunity to opt

12  out of arbitration (*Armendariz*, 24 Cal. 4th at 115–17); here Plaintiff elected not to opt out.

13         **3.**      **The FAA and Delaware Contract Law Apply**

14         Finally, Plaintiff targets the DRP's choice of law provision, but concedes the key issue:

15  Plaintiff "do[es] not contest that the FAA applies here."  Opp. at 21.  Still, she argues that California

16  law applies to her unconscionability challenges, despite a choice of law clause providing that Delaware

17  law must apply. Dkt. 14-2 at ¶ 20.  Her argument makes no difference.  The DRP is enforceable under

18  either state's law.  *See supra* Part II.B.2 (citing both California and Delaware unconscionability law).

19         Even so, the parties' choice of law is enforceable.  California has a "strong policy favoring

20  enforcement of [choice of law] provisions."  *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459,

21  464–65 (1992).  The choice of law analysis first considers whether the chosen state "has a substantial

22  relationship to the parties or their transaction," or whether there is another "reasonable basis for the

23  parties' choice."  *Id.* at 466.  If either test is met, courts ask whether "the chosen state's law is contrary

24  to the fundamental policy of California."  *Id.*  If not, "the choice of law provision must be enforced."

25  *Taylor*, 2023 WL 171359, at *7.  Applied here, the DRP's choice of law provision must be enforced.

26         **Substantial Relationship.**  Plaintiff "does not concede" that the parties have a substantial

27  relationship with Delaware despite PetSmart's incorporation there (Opp. at 22), but cites no facts or

28  authority demonstrating otherwise.  Plaintiff simply claims that "incorporation is merely a legal status."

*Id.* Courts in this circuit have expressly rejected that argument, concluding "there is both a substantial relationship with Delaware and a reasonable basis for the choice of Delaware law" if the "defendant is incorporated in that state." *Taylor*, 2023 WL 171359 at *8 (citing *Consul Ltd. v. Solide Enters., Inc.*, 802 F.2d 1143, 1147 (9th Cir. 1986)); *see also ABF Cap. Corp. v. Osley*, 414 F.3d 1061, 1065 (9th Cir. 2005). Accordingly, this factor favors enforcement of the choice of law provision.

**Fundamental Policy.** Nor does Delaware law contradict any fundamental California policy. Once again, courts have expressly rejected this argument in identical contexts. For example, in *Taylor*, Plaintiff similarly challenged the arbitration agreement as unconscionable. *Taylor*, 2023 WL 171359, at *3. In deciding which state's law would govern the unconscionability analysis, the court determined that "[t]here does not appear to be any relevant conflict between California and Delaware law," and "both states have strong policies favoring arbitration." *Id.* at *8; *see also Millan v. Chase Bank USA, N.A.*, 533 F. Supp. 2d 1061, 1067 (C.D. Cal. 2008) (similar). *Taylor* provides a clear answer that Delaware law does not contradict California policy when it comes to unconscionability.

This is confirmed by the fact that Plaintiff *admits* that the unconscionability analysis is the same under either California or Delaware law. Opp. at 23–24; *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (where the two state's "law dictate the same outcome," the Court "need not engage in the circular inquiry" of a choice of law analysis). Plaintiff only argues that Delaware law conflicts with California's prohibition on public injunctive relief waivers. But as discussed above, Plaintiff does not *request* public injunctive relief, so any difference in law is irrelevant, and that issue is delegated to the arbitrator in any event. *See supra* Section II.B.1–2; *Nezri v. PayPal, Inc.*, -- F. Supp. 3d. --, 2022 WL 16918024, at *3 (C.D. Cal. Jun. 13, 2022) (finding that the *McGill* rule provides no basis to disregard Delaware choice of law provision where "the injunctive relief [the plaintiff] seeks would benefit him and potentially other PayPal account holders, but not the public generally"). Plaintiff has therefore "fail[ed] to identify any provision of Delaware law that is" both relevant to this case and "in tension with a fundamental California policy," and this Court should enforce the parties' choice of Delaware law. *Taylor*, 2023 WL 171359 at *8.

## III.   CONCLUSION

The Court should grant the Motion and compel Plaintiff's claims to individual arbitration.

1    DATED: February 3, 2022          GIBSON, DUNN & CRUTCHER LLP

2

3                                    By: *Theane Evangelis*

4                                          Theane Evangelis
                                         Megan Cooney

5                                          Madeleine F. McKenna
                                         Emily Sauer

6                                *Attorneys for Defendant PetSmart LLC*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION
CASE NO. 4:22-CV-06210-YGR