United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **BREANN SCALLY,** | Case No.  4:22-cv-06210-YGR |
| Plaintiff, | **ORDER COMPELLING ARBITRATION** |
| v. | Re: Dkt. No. 14 |
| **PETSMART LLC,** | |
| Defendant. | |

Plaintiff BreAnn Scally, individually and on behalf of similarly situated current and former employees of defendant PetSmart LLC ("PetSmart"), filed a putative class action against defendant in California state court, asserting various violations of the California Labor Code, and additional claims under California's Unfair Competition Law, Rosenthal Act, Consumer Legal Remedies Act, and False Advertising Law. Defendant timely removed the case to federal court and shortly thereafter filed the pending motion to compel arbitration of plaintiff's claims, which defendant argues is required by the terms of a duly enacted arbitration agreement between the parties.

Having carefully considered the pleadings and briefing, and for the reasons set forth below, the Court **GRANTS** defendant's motion, arbitration is **COMPELLED**, and the action is **STAYED** pending completion thereof.  The Court, however, **ORDERS** the cost-splitting provision of the underlying arbitration agreement **SEVERED** prior to the case being sent to arbitration.

## I.      BACKGROUND

To expedite the issuance of this Order, the Court assumes Parties' familiarity with the underlying facts.

## II.     LEGAL FRAMEWORK

Neither party disputes the application of the Federal Arbitration Act ("FAA"). The FAA provides, at Section 2, that an arbitration agreement "shall be valid, irrevocable, and enforceable,

save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided" by the statute.[1] 9 U.S.C. § 2. "In deciding whether to compel arbitration under the FAA, a court's inquiry is [therefore] limited to two gateway issues: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Lim v. TForce Logistics, LLC, et al.*, 8 F.4th 992, 999 (9th Cir. 2021) (internal quotations & citation omitted). An agreement that satisfies these conditions will be enforced. *Id.*

**III.    ANALYSIS**

A. <u>Choice of Law</u>

Parties acknowledge the PetSmart Dispute Resolution Policy ("DRP") contains a choice of law provision, purporting to require this Court to apply Delaware law. In relevant part, the provision reads:

> To the extent that state law is applicable under the FAA and/or the Convention [on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 *et seq.*], and/or in the event a court of competent jurisdiction holds or decides that this DRP and/or its Waiver Provisions are not subject to and governed by the FAA, then the laws of the State of Delaware, where PetSmart LLC is incorporated, will be the applicable state law, as applicable and without regard to or application of any conflict of laws principles . . . .

(Dkt. No. 14-2, Defendant's Motion to Compel Arbitration, Exh. 1, PetSmart DRP (hereinafter, the "DRP") at § 20.) The choice of law provision is not a model of clarity. The Court interprets the provision to require the application of Delaware law where "state law is applicable under the FAA," such as here. (*Id.*) The Court then proceeds to analyze whether the parties' agreement to apply Delaware law is enforceable.

In doing so, the Court applies the choice of law principles of California, "the state in which it sits." *Saravia v. Dynamex*, 310 F.R.D. 412, 418 (N.D. Cal. 2015) (citing *Bassidji v. Goe*, 413 F.3d 928, 933 (9th Cir. 2005)). "Under California law, a contractual choice-of-law provision should be enforced if: (i) the chosen state's law has a 'substantial relationship' to the parties or the transaction,

---

[1] *See Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1259 (9th Cir. 2017) ("The final clause of § 2, generally referred to as the savings clause, permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability . . . .") (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)) (internal quotation marks omitted)).

United States District Court
Northern District of California

(ii) the forum state has no 'fundamental policy' that is inconsistent with the chosen state's law, and (iii) even if such a fundamental conflict exists, the provision should nevertheless be enforced unless the forum state has a 'materially greater interest' in the resolution of the matters at issue." *Id.* at 418-19 (quoting *In re Vortex Fishing Sys., Inc.*, 277 F.3d 1057, 1069 (9th Cir. 2002)).

The Court applies this standard to the underlying dispute. Since PetSmart is incorporated in Delaware, there is a substantial relationship with Delaware under part (i) of the test. *See Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal.4th 459, 467 (1992). Under part (ii), California has well-established, fundamental public policies in support of employees, including in the arbitration context. Under *Armendariz v. Foundation Health Psychare Servs., Inc.*, for instance, companies that impose mandatory arbitration agreements on their employees are prohibited from making it more costly to pursue arbitration than filing a civil action. 24 Cal.4th 83, 110-11 (2000). In the absence of a similarly strong public policy in Delaware, the Court finds California's strong public policies in the employment arbitration context are contrary to Delaware's approach to similar legal questions. Since, under part (iii) of the test, plaintiff lives in California, worked at PetSmart store in California, and all at-issue conduct occurred in California, the Court finds California has a materially greater interest in the resolution of the instant case than Delaware. (*See generally* Dkt. No. 1-2, Decl. of Megan Cooney in Support of Defendant's Notice of Removal, Exh. B, Class Action Complaint ("CAC") §§ 46-64.) California law, not Delaware law, therefore controls.

### B.  Unconscionability

The Court turns next to plaintiff's arguments seeking to block enforcement of the DRP as unconscionable under California law. The analysis proceeds in two steps. *First*, under the United States Supreme Court's holding in *Rent-A-Center*, we consider whether plaintiff has alleged the clause delegating questions of arbitrability to the arbitrator is unconscionable. *Second*, the Court considers whether any of plaintiff's unconscionability arguments concern "Excluded Disputes," which the DRP prohibits the arbitrator from considering and which are therefore for the Court to assess. (*See* DRP § 4 (defining "Excluded Disputes").)

///

///

United States District Court
Northern District of California

*i.    Delegation Clause*

Where plaintiffs do not allege with specificity that ***the delegation clause*** in an arbitration agreement is unenforceable, the Court will enforce the clause as written.[2] *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 71 (2010). Allegations that the arbitration agreement ***as a whole*** is unconscionable are not sufficient to render a delegation clause void for unconscionability. *See id.* at 70 ("[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate.") Here, the Court understands plaintiff to assert that the arbitration agreement's cost-splitting provision makes the delegation clause unconscionable.[3] (*See* Dkt. No. 24, Plaintiff's Opposition to Defendant's Motion to Compel Arbitration ("Opp'n") at 14:14-15 ("Both the delegation provision and the [agreement] generally contain numerous unconscionable terms[,]" such as the cost-splitting provision); *see also id.* at 17:13-14 (arguing "the cost-splitting provision, as applied to the delegation clause [as well as the contract as a whole], [is] unconscionable under California law") (citation omitted) (alteration in original) .) The Court therefore examines the potential procedural and substantive unconscionability of the provision.

---

[2] Parties to an arbitration agreement can delegate to an arbitrator the authority to assess the arbitrability of an agreement so long as the delegation is made "*clearly and unmistakably*." *Lim*, 8 F.4th at 999-1000 (quoting *Brennan v. Opus Bank*, 796 F. 3d 1125, 1130 (9th. Cir. 2015)) (emphasis in original). A clause that expressly delegates such authority to the arbitrator, "*i.e.*, a delegation clause," is one way to satisfy this threshold. *Id.* at 1000 (citation omitted). That the DRP contains a viable delegation clause which clearly and unmistakably delegates authority to the arbitrator to consider certain arguments about the DRP's enforceability does not appear to be in genuine dispute.

[3] Plaintiff advances two other arguments which fail to persuade. *First*, she asserts that PetSmart imposes "[o]ne-sided arbitration" on employees (*see* Opp'n at 17:21-18:17) by packaging the DRP together with PetSmart's Training Repayment Agreement Provision, a separate contract the company enters into with employees who enroll in the Grooming Academy. CAC ¶ 3. This document is not part of the DRP and is therefore not presently at issue.

*Second*, plaintiff alleges the DRP is unconscionable because it "prohibits the use of arbitrators from AAA or JAMS, which are two of the most well-established arbitration providers in the country." Opp'n at 18:19-20. This argument appears to be a red herring. Indeed, plaintiff's analysis of this claim essentially parrots her earlier argument that the DRP's cross-splitting provisions are unconscionable and that limitations on the selection of arbitrators further erodes claimants' due process rights. *Id.* at 19:1-3. The Court assesses plaintiff's arguments regarding the cost-splitting provisions on the merits *infra*.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Procedural Unconscionability.** "The oppression that creates procedural unconscionability arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice. Oppression can be established by showing the contract was one of adhesion or by showing from the totality of the circumstances surrounding the negotiation and formation of the contract that it was oppressive." *Lim*, 8 F.4th at 1000 (internal quotations & citations omitted). Here, while the DRP contains an opt-out provision and states that prospective employees can seek to negotiate the agreement by contacting PetSmart's General Counsel, PetSmart has proffered no evidence that the existence of these terms creates opportunities for "real negotiation" and "meaningful choice" for employees. (*See* DRP § 21.) For instance, PetSmart does not allege whether any employees have ever negotiated the terms of the DRP or made use of the opt-out provision. Further, the online job application system through which prospective employees access the DRP is configured such that applicants ***must*** accept the terms of the arbitration agreement as-is to submit their job application. (Dkt. No. 14-1, Decl. of Jennifer Offner[4] in Support of Defendant's Motion to Compel Arbitration ("Offner Decl.") ¶¶ 9-10.) The Court finds the lack of evidence that the opt-out and negotiation provisions have ever been utilized, the fact that prospective employees are unable to submit their job application without agreeing to the arbitration agreement, and the unique pressures implicated by preemployment arbitration agreements[5] together evince an oppressive power imbalance that creates at least moderate procedural unconscionability.

**Substantive Unconscionability.** California has a long-standing public policy against the imposition of fee-based barriers to employees vindicating their rights through arbitration. *See Armendariz*, 24 Cal.4th at 110-11 ("[W]hen an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require

---

[4] Jennifer Offner is identified as the Director, Field HR-Store Operations & Services, Vet Health Services for PetSmart. Offner Decl. ¶ 1.

[5] *See Carbajal v. CWPSC, Inc.*, 245 Cal.App.4th 227, 243 (Cal. App. 2016) ("As the [California] Supreme Court repeatedly has explained, 'in the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement.'") (quoting *Armendariz*, 24 Cal.4th at 115).

United States District Court
Northern District of California

1    the employee to bear any *type* of expense that the employee would not be required to bear if he or

2    she were free to bring the action in court.") (emphasis in original). The Ninth Circuit has similarly

3    held, applying California law, that substantive unconscionability exists when a fee-shifting clause

4    creates for employees a greater financial risk in arbitration claims than they would face if they

5    were to litigate those same claims in federal court. *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 1004

6    (9th Cir. 2010). Indeed, "district courts have [also] found cost-splitting provisions in employment

7    arbitration agreements substantively unconscionable because the employer generally has far

8    greater resources and the employee should not be required to pay for the opportunity to present

9    claims—especially where employees would not bear those costs in federal court." *See Lim*, 8 F.4th

10   at 1002 (collecting cases). Here, the adhesion-like arbitration agreement contains cost-splitting

11   provisions requiring parties to split arbitration costs unless the arbitrator determines plaintiff is

12   incapable of paying such costs and adjusts the cost-splitting arrangement accordingly. (*See* DRP §

13   16.) In other words, she must accept that she could be saddled with immense fees in order to then

14   argue to the arbitrator that assessing such fees would be unjust.[6] This is a bald attempt to chill

15   PetSmart employees' efforts to hold their employer accountable and cannot stand.[7] The Court

16   therefore finds significant substantive unconscionability in the form of the cost-splitting

17   provisions. As the provision is found both procedurally and substantively unconscionable, it is

18

19        [6] Defendant contends plaintiff has not sufficiently pled that initiating arbitration against

20   PetSmart would involve payment of high fees and, relatedly, that Ms. Scally cannot afford such
     fees. *See* Dkt. No. 27, Defendant's Reply in Support of its Motion to Compel Arbitration (the

21   "Reply") at 3:20-23. This fails to persuade. Plaintiff includes with her Opposition a declaration
     from Ms. Scally explaining that she was barely making ends meet while working at PetSmart and

22   earning $15/hour. Dkt. No. 24-1, Decl. of BreAnn Scally in Support of Plaintiff's Opp'n ¶ 5. She
     also "had very little in savings and had significant credit card debt and student debt" at the time.

23   *Id.* at ¶ 4. Ms. Scally therefore asserts, "[t]here is no way I could have afforded to pay for an
     arbitrator at rates starting at a bare minimum of $200 per hour plus additional fees and costs, either

24   at the time I applied to PetSmart or while [ ] working there. If the cost-splitting provision in
     PetSmart's arbitration agreement were enforced, I would not have been able to arbitrate against

25   them." *Id.* at ¶ 6. The Court credits Ms. Scally's allegations on their face and because defendant
     has not shown good cause for discounting them. Plaintiff therefore has sufficiently alleged that her

26   financial circumstances would have limited her ability to arbitrate against PetSmart were the cost-
     splitting provision enforced.

27        [7] Notably, the American Arbitration Association and JAMS, Inc. limit the fees employees

28   can be charged for raising a dispute in arbitration. *See* Opp'n at 15:19-21 & n. 7.

6

United States District Court
Northern District of California

1    void as unconscionable.

2            California law affords the Court significant discretion to sever unconscionable provisions

3    from otherwise enforceable contracts. *See* Cal. Civil Code § 1670.5(a) ("If the court as a matter of

4    law finds the contract or any clause of the contract to have been unconscionable at the time it was

5    made the court may refuse to enforce the contract, or it may enforce the remainder of the contract

6    without the unconscionable clause . . . ."). The California Supreme Court reaffirmed this

7    discretion, holding that, where an unconscionable "provision can be extirpated from the contract

8    by means of severance or restriction, then such severance and restriction are appropriate."

9    *Armendariz*, 24 Cal.4th at 124. In the arbitration context, an unconscionable term should generally

10   not be severed, however, if the provision was drafted in bad faith. *Lim*, 8 F.4th at 1005-06. The

11   existence of multiple unconscionable terms in an arbitration agreement is one example of

12   circumstances under which severance may similarly not be appropriate, as doing so could

13   "encourage drafters to overreach." *Id.* at 1006 (citation omitted). Here, the Court finds the cost-

14   splitting provision unconscionable as applied to the delegation clause. The Court exercises its

15   discretion to sever the cost-splitting provision.

16                        *ii.*    *Other Provisions in the Agreement*

17           The Court last considers plaintiff's arguments concerning Excluded Disputes which the

18   DRP's delegation clause does not authorize arbitrators to consider.[8] (*See* DRP at § 4.) These consist

19   of arguments attacking (i) the purported waiver of public injunctive relief and (ii) the mass

20   arbitration provision.

21           **Waiver of Injunctive Relief.** Plaintiff first challenges as unconscionable language in the

22   DRP requiring PetSmart employees to waive their right to bring "representative actions" against the

23   company, which includes actions that "award injunctive relief other than in favor of the Covered

24   Individual or Company seeking such relief . . . ." (DRP § 11.) She characterizes this language as

25   constituting a waiver of public injunctive relief in contravention of the California Supreme Court's

26

27           ───────────────────

28           [8] *See* DRP § 4 (defining "Excluded Disputes" to include, among other disputes, those
     concerning the agreement's representative waivers and mass arbitration provisions).

United States District Court
Northern District of California

holding in *McGill v. Citibank, N.A. See* 2 Cal.5th 945, 955 (2017) (barring waivers of injunctive relief that have "the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public," as distinguished from "[r]elief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff") (internal quotations & citations omitted).

In plaintiff's own words, she "seeks to require PetSmart to stop falsely advertising its training as free to prospective employees, stop falsely representing the Grooming Academy as a legitimate educational institution able to issue enforceable debt, and to comply with the law governing consumer lending disclosures." (Opp'n at 7:15-18.) As defendant correctly explains, however, only certain *existing* PetSmart employees are eligible to enter the Grooming Academy. (Reply at 6:24-7:8.) The primary beneficiaries of the injunctive relief plaintiff seeks would therefore be a sub-set of current PetSmart employees rather than the general public. Plaintiff's argument that the instant case implicates *McGill* therefore fails to persuade. *See Hodges v. Comcast Cable Communications,* LLC, 21 F.4th 535, 549 (9th Cir. 2021) (holding that relief that did not "primarily benefit the general public as a more diffuse whole" did not constitute public injunctive relief under *McGill*).

**Mass Arbitration Provision.** Plaintiff also challenges the DRP's mass arbitration provision.[9] The crux of her argument appears to be that the provision operates to restrict employees' choice of counsel when initiating proceedings against PetSmart. (*See* Opp'n at 5:1-3 ("[T]he [m]ass [a]rbitration provision unilaterally prohibits PetSmart employees from retaining certain legal counsel . . . ."); *see also id.* at 12:12-13 (explaining that the "practical effect [of the provision] is to restrict PetSmart employees from selecting their own employees in arbitration").) Defendant counters that plaintiff misunderstands the provision, which it contends "provides that when 100 or more arbitration demands asserting the same or similar Covered disputes are made by claimants represented by the same lawyer(s) or law firm(s), the parties will not arbitrate the Covered disputes

---

[9] The Court notes defendant consents to sever the mass arbitration provision to the extent the Court determines the provision is unconscionable. *See* Reply at 13:27.

United States District Court
Northern District of California

at issue therein, *which instead will be litigated in a court of competent jurisdiction*." (Reply at 10:17-20) (emphasis in original) (internal quotations & citation omitted). Assuming without deciding that plaintiff has standing to contest the mass arbitration provision, she does not appear to contend with the fact that, under the language at issue, "the 101ˢᵗ employee is free to choose whatever counsel she wants—but if she chooses the same counsel as 100 other employees, the parties will litigate in court, rather than arbitrate." (Opp'n at 10:21-23.) This significantly undermines her unconscionability argument,[10] which the Court declines to credit.

For the foregoing reasons, the Court holds that plaintiff has not met their burden to show any Excluded Disputes are unenforceable

### IV.      CONCLUSION

For the foregoing reasons, the Court therefore **ORDERS** the cost-splitting provision **SEVERED** from the DRP. As the Delegation Clause and underlying agreement are otherwise enforceable, the Court **GRANTS** defendant's request to compel arbitration on plaintiff's claims.[11]

The Court **ORDERS** the case **STAYED** pending the outcome of arbitration. However, for statistical purposes only, the case shall be administratively closed. The Parties shall file a joint status report within fourteen (14) days from the date of the arbitrator's order, and if necessary and appropriate, bring an administrative motion to reopen the case.

---

[10] Plaintiff's argument that *MacClelland v. Cellco P'ship*, Case No. 21-cv-08592-EMC, 2022 WL 2390997 (N.D. Cal. July 1, 2022), *appeal filed* Case No. 22-16020 (9th Cir. July 13, 2022), requires a different result also fails to persuade. That case concerned, among other contractual provisions, language in an arbitration agreement that (i) imposed a requirement that consumers notify defendant of their intent to bring a claim within 180 days of receiving their bill; and (ii) required arbitrations to proceed in tranches, potentially delaying claimants' ability to vindicate their rights. *Id.* at *6-7, *11-14. The *MacClelland* court held the arbitration agreement's notice requirement was not quite as "draconian" as a "statute of limitations" limitation but still created "a potential trap to the unwary that may have the same effect as a short limitations period" and therefore represents "at least some degree of substantive unconscionability." *Id.* at *7. The court held the requirement that arbitrations proceed in tranches was "pregnant with the risk that claims will be effectively barred when coupled with the statute of limitations" and held the requirement substantively unconscionable. The mass arbitration provision in the instant case does not implicate similarly significant barriers to individuals' ability to seek relief in the first instance.

[11] In doing so, this Court joins at least two other district courts in enforcing the same or similar versions of the PetSmart DRP. *See generally Hampton v. PetSmart LLC*, Case No. 2:22-cv-01079-SB-pVC, 2022 WL 2288308 (C.D. Cal. Mar. 18, 2022); *Rivera v. PetSmart, Inc.*, Case No. 18-2121, 2018 WL 5045380 (E.D. Pa. Oct. 17, 2018).

This Order terminates Docket Number 14.

**IT IS SO ORDERED**.

Dated:  May 25, 2023

YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT JUDGE