**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **BREANN SCALLY,** *on behalf of herself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>**PETSMART LLC,**<br><br>Defendant. | Case No. 4:22-cv-06210-YGR<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL**<br><br>Re: Dkt. No. 35 |

Plaintiff BreAnn Scally moves to certify for interlocutory appeal under 28 U.S.C. § 1292(b) two questions relative to this Court's order granting defendant PetSmart LLC's motion to compel individual arbitration of her various state law claims. (Dkt. No. 34, Order Compelling Arbitration (the "Arbitration Order").) Defendant PetSmart opposes. Having carefully considered parties' briefs, the Court **DENIES** the motion.[1]

**I.     BACKGROUND**

The Court assumes parties' familiarity with the underlying facts, and so provides only the procedural history relevant to the present motion.

On November 23, 2022, defendant PetSmart filed a motion to compel arbitration of plaintiffs' claims. On May 25, 2023, the Court granted defendant's motion and stayed proceedings in the above-captioned case. The Court, however, ordered the fee-splitting provision of the underlying arbitration agreement severed prior to the case being sent to arbitration. Invalidating the fee-splitting provision was necessary because, as the Court explained in its Arbitration Order, the provision made the challenged delegation clause unconscionable. The Court exercised its discretion to sever the fee-splitting provision rather than invalidate the entire agreement because the provision could be extirpated, and no other provisions were found unconscionable.

---

[1] The Court finds this matter suitable for resolution without a hearing, as permitted by Civil Local Rule 7-1(b) and Federal Rule of Civil Procedure 78.

As relevant here, the Court also considered and rejected plaintiff's argument that the representative action waiver in the underlying arbitration agreement amounted to a waiver of public injunctive relief in violation of *McGill v. Citibank, N.A.*, 2 Cal.5th 945 (2017). *See also Hodges v. Comcast Cable Commc'ns, LLC*, 21 F.4th 535, 549 (9th Cir. 2021) (holding that injunctive relief that does not "primarily benefit the general public as a more diffuse whole" is not public injunctive relief). The Court found that the primary beneficiaries of the injunctive relief plaintiff sought were current PetSmart employees who are eligible for pet grooming jobs like the one plaintiff held and for which she signed the underlying arbitration agreement. Because this universe of beneficiaries is more limited, the Court declined to apply *McGill*.

Plaintiff now moves for certification of the Court's Arbitration Order for interlocutory review with respect to the two following questions:

1. What constitutes a request for "public injunctive relief" under California law, including California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*; and
2. Whether, and how, a party's bad-faith inclusion of unconscionable contract terms affects the court's discretion to sever those terms or invalidate the contract entirely under Cal. Civil Code § 1670.5(a) and California law.

(Dkt. No. 35, Plaintiff's Motion for Certification of Interlocutory Appeal ("Pl's Mot.") at 2:8-11.)

## II.    LEGAL FRAMEWORK

"Congress chose to confer on district courts first line discretion to allow interlocutory appeals." *Swint v. Chambers Cnty Comm'n*, 514 U.S. 35, 47 (1995). A district court may certify an otherwise non-final order for interlocutory appeal where the three requirements of Section 1292(b) are satisfied: (i) the order must implicate "a controlling question of law," (ii) there must be "substantial ground for difference of opinion" as to the question, and (iii) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (quoting 28 U.S.C. § 1292(b)). The party requesting certification bears the burden of establishing that the three statutory requirements are met. *Id.* (citation omitted).

///

///

**III.     ANALYSIS**

The Court analyzes, in turn, both questions plaintiff seeks to certify for appeal.

A.  The Scope of "Public Injunctive Relief" under California Law

With respect to plaintiff's first question, the Court concentrates its analysis on the second of the three *Couch* factors as it is dispositive. The question for the Court is therefore whether there is substantial ground for a difference of opinion as to the scope of "public injunctive relief" under California law and as applied to the instant case.

The Court begins by assessing the nature of the injunctive relief plaintiff seeks. As set forth in the Arbitration Order:

> In plaintiff's own words, she 'seeks to require PetSmart to stop falsely advertising its training as free to prospective employees, stop falsely representing the Grooming Academy as a legitimate educational institution able to issue enforceable debt, and to comply with the law governing consumer lending disclosures.' As defendant correctly explains, however, only certain existing PetSmart employees are eligible to enter the Grooming Academy. Thus, the primary beneficiaries of the injunctive relief plaintiff seeks would therefore be a sub-set of current PetSmart employees rather than the general public.

(Arbitration Order at 8:6-12 (cleaned up).) On this basis, the Court previously determined that the at-issue waiver of injunctive relief did not violate *McGill*.

Having reconsidered the above-referenced analysis in light of the pending motion, the Court remains of the view that its prior analysis is consistent with the principles of *McGill*. Further, the Court discerns no tension among the key cases cited by the parties (*McGill*, *Maldonado*, *Mejia*, and *Hodges*) relative to the application of *McGill* to the instant case. Each case, at its core, stands for the proposition that waivers of injunctive relief that inure to the benefit of sub-sets of individuals, rather than the general public, are not public injunctive relief.[2]

---

[2] *See McGill*, 2 Cal.5th at 955 ("Relief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff—does not constitute public injunctive relief."); *Maldonado v. Fast Auto Loans, Inc.*, 60 Cal.App.5th 710, 721 (2021) (holding that injunctive relief "encompass[ing] all consumers and members of the public" is public injunctive relief, as opposed to private injunctive relief); *Mejia v. DACM, Inc.*, 54 Cal.App.5th 691, 703-04 (2020) (reiterating that "injunctive relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public" is covered by *McGill*); *Hodges*, 21 F.4th at 542 ("public injunctive relief within the meaning of McGill is limited to forward-looking injunctions that seek to prevent future violations of law for the benefit of the general public as a whole, as opposed to a particular class of persons,

On this basis, the Court concludes there are not substantial grounds for disagreement as to the application of *McGill* and its progeny to the instant case. Plaintiff's request to certify for interlocutory appeal her first question pertaining to the scope of "public injunctive relief" is therefore denied.

Further, plaintiff's three main counterarguments do not require otherwise.[3] *First*, plaintiff points to *Vaughn v. Tesla, Inc.* as an example of tension between the *Hodges* court's interpretation of *McGill*, on the one hand, and the California Court of Appeals decisions in *Maldonado* and *Mejia* on the other. *See generally Vaughn v. Tesla, Inc.*, 87 Cal.App.5th 208 (2023). Assuming without deciding that characterization is accurate, the mere acknowledgement by the California Court of Appeals that *Hodges* may have been wrongly decided does not necessarily create a substantial grounds for disagreement as to the application of *McGill* and its progeny to the instant case. As previously discussed, the Court views the Arbitration Order's analysis as consistent with the principles of the key cases discussed by the parties.

*Second*, plaintiff takes issue with the Court's characterization of the beneficiaries of the injunctive relief she seeks. Plaintiff explains that she seeks "injunctive relief to prevent PetSmart from continuing to misrepresent PetSmart's Grooming Academy as free on its website, social media posts, and in public job postings." (*See* Dkt. No. 37, Pl's Reply at 8:27-9:1.) She then characterizes such relief as "public injunctive relief" that inures to the benefit of prospective employees and enjoins future unlawful behavior. (*See* Pl's Reply at 8:27-9:3.) For the reasons set

---

and that do so without the need to consider the individual claims of any non-party.").

[3] There is also the issue of preemption. Parties dispute whether *Mejia* and *Maldonado* are preempted by the Federal Arbitration Act. The Court clarifies that *Hodges* identified the "*Mejia-Maldonado* rule", "namely, that *any* injunction against future illegal conduct constitutes non-waivable public injunctive relief," and held *that* rule would run afoul of the Act. *Hodges*, 21 F.4th at 547 (emphasis in original). A federal district court in this circuit is required to follow *Hodges*' preemption analysis as to the *Mejia-Maldonado* rule, as identified therein, and thus this Court does not express a view as to the correctness of *Hodges*' interpretation of *Mejia* or *Maldonado*. Nonetheless, *Hodges* does not compel a different result as the Court concludes that the ruling in the Arbitration Order is consistent with the principles of not only *Maldonado* and *Mejia* but also *McGill* and *Hodges*.

forth above, the Court disagrees.[4]

*Third*, plaintiff identifies California federal district court cases in which courts have "struggled to square *Hodges* with the prevailing definition of public injunctive relief." (Pl's Reply at 10:4-5.) This does not persuade the Court that there exist substantial grounds for disagreement as to the application of *McGill* to the instant case.

Thus, the Court determines that substantial grounds do not exist for disagreement as to the application of *McGill* to the instant case and, on that basis, declines to certify plaintiff's first question for interlocutory appeal.[5]

B. This Court's Discretion to Sever Terms Drafted in "Bad Faith"

The Court turns to the next question for certification, namely the Court's discretion to sever terms drafted in "bad faith" from an arbitration agreement. The Court begins with the text of the Arbitration Order itself. Plaintiff makes much of the following language which characterizes the fee-splitting provision:

> Here, the adhesion-like arbitration agreement contains cost-splitting provisions requiring parties to split arbitration costs unless the arbitrator determines plaintiff is incapable of paying such costs and adjusts the cost-splitting arrangement accordingly. In other words, she must accept that she could be saddled with immense fees in order to then argue to the arbitrator that assessing such fees would be unjust. This is a bald attempt to chill PetSmart employees' efforts to hold their employer accountable and cannot stand.

(Arbitration Order at 6:10-15 (citations omitted).)

Notably, the above excerpt does *not* contain a finding of bad faith, as plaintiff suggests. It

---

[4] While PetSmart may advertise Grooming Academy positions more broadly, such as on social media, this does not compel a different result. A recipient of such ads could not directly apply for the Academy before first becoming a PetSmart employee and satisfying other prerequisites for a grooming position. Thus, any benefit to the recipients of such advertisements is too attenuated and incidental to change the foregoing analysis.

[5] In addition, plaintiff appears to suggest that the mere fact that she brings claims under California's False Advertising Law, Unfair Competition Law, and Consumer Legal Remedies Act requires a finding that public injunctive relief is implicated here. The Court does not understand *McGill* to set such a bright-line rule. On this basis, the Court has applied the fact-intensive tests set forth in *McGill* and its progeny, *see supra,* note 3, to the instant case and found that where, as here, the primary beneficiaries of the injunctive relief sought are an identifiable sub-group of persons (*i.e.*, employees) rather than all consumers, public injunctive relief is not present.

is fair to say the Court admonished defendant for including the fee-splitting provision in the at-issue arbitration agreement. However, the Court stopped short of conducting a bad faith analysis. Further, the only time the Court invoked the phrase "bad faith" in the Arbitration Order was later, when distinguishing the at-issue agreement from those drafted in bad faith and for which severance would be inappropriate. Thus, the Arbitration Order did not reach the question of whether bad faith was present in the underlying arbitration agreement and in fact suggested there was none.[6] Plaintiff's second question is therefore beyond the scope of the Order. The Court declines to certify it for interlocutory appeal on that basis.[7]

## IV.   CONCLUSION

For the foregoing reasons, the Court declines to certify either of plaintiff's questions for appeal to the Ninth Circuit. Thus, the motion is **DENIED**.

This terminates Dkt. No. 35.

**IT IS SO ORDERED.**

Dated: January 2, 2024

*[signature]*

YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT JUDGE

---

[6] Perhaps recognizing this, plaintiff drops a footnote in her Reply asking the Court to certify *another* question: What constitutes bad faith in the drafting of arbitration agreements? *See* Pl's Reply at 6 n.1 ("To the extent that there is any ambiguity over the definition of bad faith, this in itself is an issue appropriate for certification under [Section] 1292(b).") However, plaintiff has not articulated the bases for any such ambiguity, nor has she properly moved for certification on such grounds. On that basis, the Court declines to consider plaintiff's request.

[7] Further, plaintiff did not previously seek a ruling from this court as to whether the inclusion of certain terms in the underlying arbitration agreement constituted "bad faith." She opined, at page 20 of her Opposition to PetSmart's motion to compel, that the fee-splitting provision was "well outside the bounds of most employment arbitration clauses" which "suggests that it was drafted in bad faith to test the limits of how unfavorable an arbitration agreement can possibly be and still be enforced." This is not the same as affirmatively arguing that the inclusion of the provision constitutes bad faith or requesting that the Court find make a finding as to whether the at-issue provision was drafted in bad faith. Certification of plaintiff's second question for interlocutory appeal would therefore also be inappropriate as it would, in effect, involve a request that the Court of Appeals render an advisory opinion on what constitutes bad faith contract drafting.